**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOHN DOE,                                         :
                                                  :
                  Plaintiff,                      :
                                                  :
        v.                                        :        CIVIL ACTION NO. 19-5885  (JFL)
                                                  :
LOUIS DeJOY, *et al.*,                            :
                                                  :
                  Defendants.                     :

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT QIANA REID'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS .......................................................................................2

III. STATEMENT OF THE QUESTIONS INVOLVED ...........................................5

IV.  SUMMARY OF ARGUMENT ...............................................................................6

V.   ARGUMENT ...........................................................................................................6

     A.  Title VII provides the exclusive remedies for claims of
         employment discrimination. ............................................................... 6

     B.  No *Bivens* remedy should be implied here in light of Title VII's
         alternative processes and additional special factors counseling hesitation. ................ 9

          1.   This case presents a new context requiring an
             analysis of alternative processes and special factors. ....................................10

          2.   Title VII provides an alternative process to protect
             any constitutional interest. ..........................................................10

          3.   Additional special factors counsel hesitation in
             implying a *Bivens* remedy in the federal-employment context. ....................11

     C.  Even if the Court implies a *Bivens* remedy here, Doe's claims against
         Reid should be dismissed because she is entitled to qualified immunity. .................12

          1.   *Iqbal* and *Twombly* provide the applicable pleading standard. ......................13

          2.   Doe's conclusory allegations that Reid was biased and
             discriminated against him on account of his sexual
             orientation are not entitled to the assumption of truth. ..................................15

          3.   Doe's remaining allegations regarding Reid's conduct are
             insufficient to state any constitutional violation. ...........................................16

VI.  CONCLUSION .....................................................................................................20

## I.      INTRODUCTION

When plaintiff John Doe filed his First Amended Complaint (ECF 9), the Third Circuit's pronouncement in *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257 (3d Cir. 2001)— that sexual-orientation discrimination claims were not within the scope of Title VII— limited judicial remedies for the sexual-orientation discrimination that he alleges. Doe thus apparently sought to hold Qiana Reid, a supervisor at the postal service's Allentown-Postal Road branch, personally liable for money damages for alleged violations of his constitutional rights under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). *See* Am. Compl. ¶ 10; *see also* Counts I-IV.

On June 15, the United States Supreme Court held that Title VII prohibits sexual-orientation discrimination in employment because such discrimination is, in the language of Title VII, "because of . . . sex." *Bostock v. Clayton County, Georgia*, No. 17-1618, --- S. Ct. ---, 2020 WL 3146686, at *3 (U.S. June 15, 2020) ("Today, we must decide whether an employer can fire someone simply for being homosexual or transgender. The answer is clear. An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids.").

With *Bibby* no longer controlling the analysis of Doe's claims under Title VII, and with sexual-orientation discrimination now clearly prohibited by Title VII, Doe's claims against defendant Reid are even more plainly barred than they were before *Bostock*. Title VII provides the exclusive remedy for the discrimination that Doe alleges. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (Title VII provides the "exclusive judicial remedy for claims of discrimination in federal employment."); *Owens v. United States*, 822 F.2d 408, 410 (3d Cir. 1987) (per curiam) (Title VII's remedial scheme "'precludes actions against federal officials for

alleged constitutional violations as well as actions under other federal legislation.'") (quoting *Kizas v. Webster*, 707 F.2d 524, 542 (D.C. Cir. 1983)). And, likewise, no *Bivens* remedy should be implied here in light of Title VII's alternative processes and special factors counseling hesitation. Additionally, Reid is entitled to qualified immunity. Doe's claims against defendant Reid must be dismissed, with prejudice, in their entirety.[2]

## II.   STATEMENT OF FACTS

Doe, who "identifies as a gay male," Am. Compl. ¶ 11, is a former employee of the USPS's Allentown-Postal Road branch, where he worked as a letter carrier from 2007 until his termination in 2019. *Id.* ¶ 9.

Doe alleges that, during his employment, he "is believed to be the only openly gay employee . . . at the Allentown-Postal Road Branch." *Id.* ¶ 13. On this basis, Doe alleges, he was subjected to harassment and a hostile work environment and ultimately discharged based on (a) his sexual orientation, and (b) his sex, gender, and/or gender stereotyping. Specifically, against defendant Reid, he asserts the following claims:

- Count I: "wrongful discharge/termination based on sexual orientation in violation of the Equal Protection and Due Process Clause of the Fifth Amendment to the United States Constitution"

- Count II: "wrongful discharge/termination based on sex, gender, and/or gender stereotyping in violation of the Equal Protection and Due Process Clause of the Fifth Amendment to the United States Constitution"

---

[2] Because the action should be dismissed in its entirety for the reasons set forth here and in the Postmaster General's motion to dismiss (ECF 19), defendants do not anticipate engaging in discovery while the motions to dismiss are pending and respectfully request that the Court not order the parties to begin discovery while the motions are pending. Indeed, the Supreme Court has admonished that "until threshold [qualified] immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If the Court requires a separate motion to stay discovery, defendants will promptly file that motion, too.

- Count III: "hostile work environment/harassment based on sexual orientation in violation of the Equal Protection and Due Process Clause of the Fifth Amendment to the United States Constitution"

- Count IV: "hostile work environment/harassment based on sex, gender, and/or gender stereotyping in violation of the Equal Protection and Due Process Clause of the Fifth Amendment to the United States Constitution"

The allegations supporting these claims are described in additional detail in Part II.B and C of the Memorandum of Law in Support of Defendant Postmaster General's Motion to Dismiss the First Amended Complaint ("Postmaster General Br.," ECF 19-1, at 4-5), which is incorporated here.[3]

With respect to defendant Reid, specifically, Doe alleges that she "was, at all times relevant hereto, the supervisor/manager who assumed responsibility at the Allentown Postal Road Branch, after which time Doe experienced discrimination and harassment by Reid and other supervisors and co-workers." Am. Compl. ¶ 3. He alleges that she "was actually involved in the discriminatory and harassing conduct as alleged herein, including by Reid threatened Doe with termination previously for no reason, Reid is believed to have participated in the decision to terminate Doe, is believed to have not agreed to Doe's reinstatement, and Reid made a celebratory statement about Doe's firing." *Id*. Doe supports these allegations of Reid's "actual[] involvement" with just three instances, over a five-plus year period:

- In the winter of 2014, Doe allegedly "entered a room where Ms. Reid was present, and Ms. Reid stated, in front of the other co-employees who were also present, 'I'm not playing, I want him fired,' referring to Doe," although "Doe alleges that he did not do anything at the time, which warranted termination, which otherwise would have prompted the comment." Am. Compl. ¶¶ 17.a, 38.a, 53.a, 65.a.

---

[3] *See* Order (ECF 16) (Apr. 27, 2020) (permitting individual defendants to join, "in whole or in part any motion to dismiss filed by the government").

- At some unknown time, the Rural Carriers' Supervisor allegedly said to Reid: "I fucking swear to God I'm gonna get his ass fired," referring specifically to terminating Doe's employment. *Id.* ¶¶ 12.e, 33.e, 48.e, 60.e.

- After Doe was removed from employment at the Allentown-Postal Road branch, Reid allegedly "announced to the carriers that '[Doe] is finally gone, and will not be coming back.'" *Id.* ¶¶ 14, 35, 50, 62.

Notably, none of these alleged statements made by or to Reid involve Doe's sex, gender, or sexual orientation. Thus, Doe bases his discrimination claims against her on the unsupported assertion that "Doe perceived bias from Ms. Reid and Doe believed it to be because Doe is gay." *Id.* ¶ 3. Doe does not allege that defendant Reid was aware of any of the handful of offensive and derogatory comments made by others, alleged elsewhere in his amended complaint, *see, e.g.*, *id.* ¶¶ 12-13, that do appear to be related to his sexual orientation. *See infra* Part V.C.2-3.

In April 2019, Doe was put on emergency placement out of the Allentown-Postal Road branch after he "kicked an employee in her buttocks area for no apparent reason during the morning safety talk." Postmaster General Br. Ex. 1 (ECF 19-3).[4] The postal service then issued him a Notice of Removal, notifying him "that you will be removed from the Postal Service effective July 20, 2019." Postmaster General Br. Ex. 2, at 1 (ECF 19-4). The Notice of Removal was signed by Byrenda Wilson and by defendant Reid as the "higher level concurring official." *See id.*

Doe then initiated the grievance procedure available to him through his union's collective bargaining agreement. That is, he "exhausted his Collective Bargaining Agreement's . . . negotiated grievance procedure, exhausted his Step A and Step B appeals, and requested arbitration although the union denied those requests and indicated to Doe that they will not be

---

[4] This emergency placement letter was signed by Byrenda Wilson. *See* Postmaster General Br. Ex. 1 (ECF 19-3).

4

permitting arbitration in his case." Am. Compl. ¶ 89; *see also* Postmaster General Br. at 2-3. Doe has not alleged that defendant Reid was in any way involved in the union's determination that it would not take Doe's case to arbitration.

After the conclusion of the grievance proceedings, Doe made contact with a USPS equal employment opportunity ("EEO") counselor and for the first time asserted that he had been discriminated against on the basis of his sexual orientation. He filed a formal complaint of discrimination with the EEO on December 13, 2019, *see* Postmaster General Br. Ex. 5 (ECF 19-7), and initiated this action against the Postmaster General and the USPS on the same date. After these original defendants filed a motion to dismiss (ECF 8), Doe filed an amended complaint against the Postmaster General (but not USPS), defendant Reid, and "Unknown Defendant Number 1," the person allegedly responsible for Doe's termination, *id.* ¶ 4.

After the Department of Justice approved defendant Reid's request for representation in this case, the undersigned Assistant U.S. Attorney accepted service of the first amended complaint on her behalf on April 30, 2020. This motion to dismiss follows.

## III.   STATEMENT OF THE QUESTIONS INVOLVED

A.     Should Doe's claims against defendant Reid, alleging discrimination in violation of the Fifth Amendment to the U.S. Constitution and seeking both monetary damages and equitable relief, be dismissed with prejudice in their entirety because Title VII provides the exclusive remedies for claims of employment discrimination, as set out in *Brown v. General Services Administration*?

*Suggested Answer: Yes*

B.     In the alternative, should Doe's *Bivens* claims against Reid be dismissed with prejudice in their entirety because a *Bivens* remedy should not be implied in this case, where, in

5

light of Title VII, alternative processes exist to protect any constitutional interest and special factors counsel hesitation in implying such a remedy?

*Suggested Answer: Yes*

C.      In the alternative, should Doe's claims against Reid be dismissed with prejudice in their entirety because Reid is entitled to qualified immunity, in that Doe has neither alleged any action by her, personally, that amounts to a constitutional violation, nor identified clearly established constitutional law demonstrating that Reid's alleged conduct was unconstitutional?

*Suggested Answer: Yes*

## IV.     SUMMARY OF ARGUMENT

All claims against Reid must be dismissed with prejudice in their entirety. First, the Court lacks jurisdiction to hear Doe's claims against Reid because they are preempted by the procedures and remedies available under Title VII. *Brown*, 425 U.S. 820. Second, the Court should not imply a *Bivens* remedy here in light of the alternative processes provided by Title VII and other special factors counseling hesitation. *Zigler v. Abbasi*, 137 S. Ct. 1843 (2017). Third, even if the Court concludes that a *Bivens* remedy is available here, defendant Reid would be entitled to qualified immunity, including because Doe has failed to plausibly allege any constitutional violation under *Iqbal*'s standard.

## V.     ARGUMENT

### A.     Title VII provides the exclusive remedies for claims of employment discrimination.

Indisputably, Doe's claims against defendant Reid arise entirely out of Doe's employment relationship with the postal service. Title VII, 42 U.S.C. § 2000e-16, provides the "exclusive judicial remedy for claims of discrimination in federal employment." *Brown*, 425 U.S. at 835; *see also Owens*, 822 F.2d at 410 (Title VII "provides federal employees a remedy

that 'precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation.'") (quoting *Kizas*, 707 F.2d at 542). Counts I through IV of Doe's amended complaint, alleging violations of the U.S. Constitution, are based on the exact same facts and theories as Doe's Title VII claims in Counts V through VIII. For the reasons set forth at length by the Postmaster General, whose motion to dismiss on this issue Reid joins, these constitutional claims must be dismissed in their entirety and as to all defendants. *See* ECF 19-1, at 10-13; ECF 21, at 2-5; *see also* Notice of Supplemental Authority, ECF 22.[5]

Courts in this district and elsewhere have had no difficulty finding claims for money damages from individual defendants (*i.e.*, *Bivens* claims) barred when they duplicate Title VII employment-discrimination claims. *See, e.g.*, *Wilson v. Pallman*, No. CIV.A. 09-0787, 2009 WL 2145317, at *4 (E.D. Pa. July 15, 2009) (gender discrimination and retaliation) (dismissing *Bivens* claim against plaintiff-employee's supervisor because "[n]umerous circuit and district courts have held that *Brown* operates to bar non-Title VII discrimination suits against not only the government employer but also individual co-employees" and the plaintiff's claims "are at their heart claims against the United States for employment discrimination") (citing *Wigginton v. Servidio*, 734 A.2d 798, 804 (N.J. Super. Ct. 1999) (collecting cases)); *Madden v. Runyon*, 899 F. Supp. 217, 225 (E.D. Pa. 1995) (age and disability discrimination and retaliation) ("Madden's . . . *Bivens* claim merely mirrors his claims under Title VII, the ADEA, and the Rehabilitation Act. Since Title VII, the ADEA, and the Rehabilitation Act provide plaintiff a statutory means to pursue his claims, I will grant summary judgment in favor of Runyon on Madden's . . . *Bivens*

---

[5] The undersigned does not represent the unnamed defendant, against whom Doe alleges wrongful termination in violation of the Fifth Amendment in Counts I and II. The bases for dismissal of these claims against the Postmaster General and Reid are equally applicable to the unnamed defendant.

claim."); *see also Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) ("[I]t is well-settled that USPS employees may not allege *Bivens* claims arising out of their employment relationship with the USPS.") (citations omitted).

Claims seeking equitable and declaratory relief are likewise barred by the presence of a comprehensive, statutory remedial scheme like Title VII. *Cf. Semper v. Gomez*, 747 F.3d 229, 242 (3d Cir. 2014) ("We . . . conclude that the CSRA precludes a federal employee from litigating constitutional claims for equitable and declaratory relief in a § 1331 action where the employee could pursue meaningful relief under a remedial plan that provides for meaningful review of his or her claims by judicial officers.").[6]

Doe's constitutional claims duplicate his Title VII claims, and the discrimination that he alleges, if true, could be remedied through Title VII's statutory scheme. Doe's constitutional claims must therefore be dismissed.[7]

_____

[6] Numerous federal appellate courts have also held that a government official cannot be sued in an individual capacity for equitable relief, as Reid has been here. *See, e.g., Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (collecting cases); *Kirby v. City of Elizabeth*, 388 F.3d 440, 452 n.10 (4th Cir. 2004) (concluding that injunctive relief can only be awarded against a government employee in his or her official capacity); *Wolfe v. Strankman*, 392 F.3d 358, 360 n.2 (9th Cir. 2004) ("[T]he declaratory and injunctive relief Wolfe seeks is only available in an official capacity suit."); *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) ("[S]uch equitable relief [reinstatement] could be obtained against Relin only in his official, not his individual, capacity."); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990) ("[T]he injunctive relief sought and won by Scott can be obtained from the defendants only in their official capacity as commissioners."); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("[T]he equitable relief Feit requests — a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future — can be obtained only from the defendants in their official capacities, not as private individuals."). The Third Circuit does not appear to have directly spoken on that issue.

[7] In light of *Bostock*, Doe can no longer argue, as he did in opposition to the Postmaster General's motion to dismiss, that dismissal of his constitutional claims will leave him without a remedy for the discrimination that he alleges. That argument was incorrect, even before *Bostock* was decided. *See* Postmaster General Br., at 12-13; Postmaster General Reply (ECF 21), at 3-4.

**B.      No *Bivens* remedy should be implied here in light of Title VII's alternative process and additional special factors counseling hesitation.**

Doe's claims against Reid should be dismissed in their entirety as preempted by Title VII, and the Court's analysis should end there. But additional reasons also require their dismissal, including that Supreme Court precedent does not permit a *Bivens* remedy to be implied here, in light of Title VII's comprehensive remedial scheme covering allegations of employment discrimination.

"Expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1848. Whenever a plaintiff brings a claim against a federal employee for an alleged constitutional violation, a court must decide the antecedent issue of whether a *Bivens* cause of action for damages exists at all. *See Abbasi*, 137 S. Ct. at 1857. A *Bivens* remedy "is not an automatic entitlement," and is "in most instances . . . unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). In the nearly fifty years since *Bivens* was decided, the Supreme Court has endorsed a remedy directly under the Constitution on only two other occasions and has otherwise "consistently refused to extend *Bivens* to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).[8]

The first question in determining whether a cause of action exists is whether the claim at issue seeks to extend *Bivens* into a new context. A case presents a new context when it differs "in a meaningful way from [any of the three] previous *Bivens* cases decided by" the Supreme Court. *Abbasi*, 137 S. Ct. at 1859. Once the new-context inquiry is satisfied, a court must determine whether it is appropriate to "expand[]" *Bivens* into that new context, mindful that doing so is "a

---

[8] *Bivens* itself involved a Fourth Amendment violation by federal agents. *Carlson v. Green*, 446 U.S. 228 (1980), involved Eighth Amendment violations by prison officials. *Davis v. Passman*, 442 U.S. 228 (1979), discussed in more detail below, involved a sex-discrimination claim under the Fifth Amendment.

disfavored judicial activity." *Abbasi*, 137 S. Ct. at 1857 (internal quotation omitted). Courts should consider whether there are "any alternative, existing process[es] for protecting the injured party's interest," as well as whether there are any "special factors counselling hesitation" in implying a remedy. *Id.* at 1857-58 (internal alterations omitted) (quoting *Wilkie*, 551 U.S. at 550; *Carlson*, 446 U.S. at 18). "[S]eparation-of-powers principles" are "central to th[is] analysis." *Id.* at 1857. The court should ask "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58.

### 1. This case presents a new context requiring an analysis of alternative processes and special factors.

Of the three cases in which the Supreme Court has implied a cause of action under the Constitution, *Davis v. Passman*, permitting a remedy for sex discrimination, is the most analogous to Doe's claims. Yet, *Davis* is not by any means controlling here. The plaintiff in *Davis* was a member of a congressman's staff; she therefore was within a class of employees who were at the time entirely excluded from Title VII's protections and remedies. 442 U.S. at 247 n.26. Doe—a letter carrier—is fully covered by Title VII's protections and remedies. 42 U.S.C.A. § 2000e-16(a); *Bostock*, 2020 WL 3146686, at *3 (holding sexual-orientation discrimination in employment to be prohibited by Title VII). In asking the Court to imply a *Bivens* remedy here, Doe thus seeks to extend *Bivens* into a new context.

### 2. Title VII provides an alternative process to protect any constitutional interest.

No *Bivens* remedy is available where alternative, existing statutory or administrative schemes address the constitutional interests at issue. *Abbasi*, 137 S.Ct. at 1858; *Wilkie*, 551 U.S. at 550; *Schweiker*, 487 U.S. at 427-28. Title VII indisputably creates a comprehensive remedial scheme for addressing discrimination claims of federal employees. This includes remedies for

claims based on sexual-orientation discrimination, which are now cognizable in and remediable through not only the administrative process, *see Baldwin v. Foxx*, EEOC Appeal No. 0120133080, 2015 WL 4397641 (July 15, 2015) (EEOC opinion construing Title VII's prohibition on sex discrimination to encompass discrimination on the basis of sexual orientation), but also the judicial process, *see Bostock*, 2020 WL 3146686, at *3. This is thus "not a case like *Bivens* or *Davis* in which it is damages or nothing." *Abbasi*, 137 S. Ct. at 1862 (internal quotations omitted).[9]

"[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863. Through Title VII, Doe can litigate his discrimination allegations; indeed, he started that process at the same time he filed this action. *See* Postmaster General Br. Ex. 5 (ECF 19-7)). Doe does not have a *Bivens* remedy here.

### 3. Additional special factors counsel hesitation in implying a *Bivens* remedy in the federal-employment context.

In addition to the alternative process discussed above, there are other "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy" as asserted by Doe against defendant Reid. *Abbasi*, 137 S. Ct. at 1858. In the employment context, the Supreme Court has recognized that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service."

---

[9] Additionally, the Civil Service Reform Act ("CSRA") constitutes "a comprehensive system for reviewing personnel action[s] taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). It requires that "[a]ll employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management . . . with proper regard for their . . . constitutional rights." 5 U.S.C. § 2301(b)(2). It "affords the exclusive remedy for damage claims of federal employees seeking redress for alleged constitutional violations arising out of the employment relationship." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 795 (3d Cir. 2003) (citing *Mitchum v. Hurt*, 73 F.3d 30 (3d Cir. 1995)).

*Bush v. Lucas*, 462 U.S. 367, 389 (1983) (addressing First Amendment claims of NASA employee).

*Davis* is distinguishable on this basis, too. There, the Supreme Court identified "special concerns counseling hesitation" in "a suit against a Congressman for putatively unconstitutional actions taken in the course of his official conduct," but it held that "these concerns are coextensive with the protections afforded by the Speech and Debate Clause." 442 U.S. at 246. Thus, they did not bar a *Bivens* remedy. But the *Davis* Court's disposition of the special-factors analysis by reference to the Speech and Debate Clause is inapplicable here.

This Court "must refrain from creating the [*Bivens*] remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Bush*, 462 U.S. at 389. Doe's *Bivens* claims should be dismissed.

### C. Even if the Court implies a *Bivens* remedy here, Doe's claims against Reid should be dismissed because she is entitled to qualified immunity.

Even assuming (1) that Doe's claims against Reid are not preempted by Title VII under *Brown*, 425 U.S. 820, and (2) the existence of a *Bivens* remedy against Reid notwithstanding Title VII's alternative process, Doe's claims must be dismissed because Reid is entitled to qualified immunity.

The Supreme Court has provided a two-part inquiry for the analysis of a qualified immunity defense. *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 232 (2009). First, a court asks whether the facts alleged, viewed in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). If the plaintiff has stated a constitutional violation, the court must also consider whether the constitutional right at issue was "clearly established" at the time of the alleged violation. *Id.* Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Here, Doe has not plausibly alleged a constitutional violation, so the first prong is dispositive, and the analysis need not proceed to the second step.

Doe claims a denial of equal protection, alleging that he was treated differently because he is a gay man.[10] "[T]he Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008).[11] In the public-employment context, irrational or arbitrary treatment of an individual (*i.e.*, a class of one) is not sufficient to establish an equal-protection violation. *Id.* at 604-05. To survive the first prong of qualified immunity on a motion to dismiss, Doe's pleading "must contain sufficient factual matter, accepted as true," to state an equal-protection claim that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But it does not.

### 1.   *Iqbal* and *Twombly* provide the applicable pleading standard.

The familiar standard for complaints under Federal Rules of Civil Procedure 12(b)(6) and 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief"

---

[10] Doe brings Counts I through IV under "the Equal Protection and Due Process Clause of the Fifth Amendment to the United States Constitution." Am. Compl. at 3, 12, 18, 23. Doe's pleading seems singularly based on an equal protection theory, not a due process theory. In any event, the notice that he received, *see* Postmaster General Br. Exs. 1 and 2 (ECF 19-3 and 19-4), and the opportunity to be heard in accordance with the union grievance procedures, *see* Postmaster General Br. Ex. 4 (ECF 19-6), and under the EEO procedures, *see* Postmaster General Br. Ex. 5 (ECF 19-7), would be fatal to any due-process claim.

[11] *Engquist* is a Fourteenth Amendment equal-protection case involving a state employee. The Due Process Clause of the Fifth Amendment imposes equal protection constraints on the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954).

13

Fed. R. Civ. P. 8(a). In *Iqbal* and *Twombly* the Supreme Court clarified the Rule 8 pleading standard in three important respects. First, the Court reaffirmed the principle that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Conclusory allegations—including "labels and conclusions" and "naked assertions devoid of further factual enhancement"—are insufficient to survive a defendant's motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 555, 577) (internal quotation marks omitted).

Second, the *Iqbal* Court clarified the "plausibility" standard that it previously announced in *Twombly*. Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). The standard is not satisfied if the complaint alleges facts that are "merely consistent with" or allow room for the "possibility" that the defendant acted unlawfully. *Twombly*, 550 U.S. at 557. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, to survive a motion to dismiss, the complaint must contain enough factual content "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Finally, with regard to claims against a federal official in her individual capacity (as here), the Court rejected the notion that "a claim just shy of a plausible entitlement to relief" should be allowed to proceed in the hopes that groundless claims will "be weeded out early in the discovery process through careful case management." *Iqbal*, 556 U.S. at 685 (quoting *Twombly*, 550 U.S. at 559). The Court explained that this view was fundamentally at odds with the qualified immunity doctrine's "basic thrust of . . . free[ing] officials from the concerns of

litigation, including 'avoidance of disruptive discovery.'" *Id.* (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991)). If a complaint fails to allege facts sufficient to state a non-conclusory, plausible claim for relief, the plaintiff "is not entitled to discovery, cabined or otherwise." *Id.* at 686.

Accordingly, to determine whether a plaintiff states a claim, a court must: first, identify the conclusory allegations that are *not* entitled to the assumption of truth; and second, evaluate the remaining factual allegations to determine if they plausibly suggest an entitlement to relief. *Iqbal*, 556 U.S. at 677-81.

> **2.      Doe's conclusory allegations that Reid was biased and discriminated against him on account of his sexual orientation are not entitled to the assumption of truth.**

As to the first step, Doe's allegations that he "perceived bias from Ms. Reid and Doe believed it to be because Doe is gay," Am. Compl. ¶ 3, and that he "did perceive and believe that he was being discriminated against because he is gay," *id.* ¶¶ 17.a, are conclusory allegations that are not entitled to a presumption of truth. Doe has not pleaded a single fact supporting his alleged "perce[ption]" and "belie[f]" about Reid's view of him; he has not, for example, alleged that Reid ever made any comments that in any way related to his sexual orientation or even that she knew—at any time prior to Doe's initiation of the EEO process—of the alleged offensive comments made by others.

Elsewhere in his Amended Complaint, Doe makes the additional conclusory allegations—and unsupported logical leap—that "[a] motivating factor in Doe's discharge was because Doe was not liked by the supervisors . . . . The dislike of Doe at the facility . . . was motivated by the fact that Doe was gender-stereotyped as a 'fruitcake,' is gay, and/or was perceived to be gay." *Id.* ¶ 46. Doe alleges that he was called a "fruitcake" *once*, by the colleague he kicked, *after he had already been removed* as a result of that incident. *See id.* ¶ 22.

15

None of these unsupported assertions can support Doe's claims against Reid.

### 3. Doe's remaining allegations regarding Reid's conduct are insufficient to state any constitutional violation.

When Doe's conclusory allegations are removed from consideration, Doe's remaining factual allegations are insufficient to support his discrimination claims under any of his theories. Doe's alleged evidence of discrimination by or involving Reid is limited to the following, none of which have anything to do with Doe's sexual orientation:

- In the winter of 2014, Doe allegedly "entered a room where Ms. Reid was present, and Ms. Reid stated, in front of the other co-employees who were also present, 'I'm not playing, I want him fired,' referring to Doe," although "Doe alleges that he did not do anything at the time, which warranted termination, which otherwise would have prompted the comment." Am. Compl. ¶¶ 17.a, 38.a, 53.a, 65.a.

- At some unknown time, the Rural Carriers' Supervisor allegedly said to Reid: "I fucking swear to God I'm gonna get his ass fired," referring specifically to terminating Doe's employment. *Id.* ¶¶ 12.e, 33.e, 48.e, 60.e.

- After Doe was removed from employment at the Allentown-Postal Road branch, Reid allegedly "announced to the carriers that '[Doe] is finally gone, and will not be coming back.'" *Id.* ¶¶ 14, 35, 50, 62.

These allegations demonstrate that, at most, Reid was involved in three instances—over a period of at least five years—in which she or another supervisor expressed that they did not wish for Doe to remain a postal employee. But these allegations do not plausibly suggest that Reid ever made any decision, or took any action, or failed to take any action relating to Doe based on his status as a gay man (or relating to any other employee, based on any protected characteristic). These allegations are patently insufficient to plausibly allege any constitutional violation. *Compare Rissman v. Chertoff*, No. 08-7352(DC), 2008 WL 5191394, at *4 (S.D.N.Y. Dec. 12, 2008) ("In essence, plaintiff alleges that because he was yelled at [by his supervisors], this must have been because [of his protected status]. Such conclusory and speculative statements are insufficient."), *with Carver v. City of Trenton*, 420 F.3d 243, 263-64 (3d Cir. 2005) (a reasonable

jury could conclude that supervisors' race-neutral statements and conduct were racially motivated because of the supervisors' blatantly racist statements to and about others, of which the plaintiff was aware).

Doe's allegations regarding purported comparators who were allegedly "disciplined more harshly [than Doe was for kicking his co-worker] . . . but who were not openly gay," *see* Am. Compl. ¶¶ 4, 27, are also insufficient to state any constitutional violation against Reid. Doe's Amended Complaint contains no allegation that Reid was at all involved in the decisions regarding the purported comparators' discipline. Indeed, Doe specifically alleges that some of the comparators retained their jobs as a result of arbitration through the union grievance process, not because of any decision by any postal supervisor, much less by Reid. *E.g.* Am. Compl. ¶ 27.d ("[U]pon information and belief, James M. was not terminated following arbitration."); *id.* ¶ 27.g ("Upon information and belief, the removals of these two . . . individuals [who allegedly fought outside of the post office] were not made effective, but rather, they were permitted to take their cases to arbitration, while Doe was not."). In Doe's case, he "requested arbitration although *the union* denied those requests and made clear to Doe that they will not be pursuing arbitration in this case." *Id.* at 89 (emphasis added).

Nor has Doe adequately pleaded any hostile work environment claim against Reid.[12] The handful of derogatory and offensive statements about his sexual orientation that Doe alleges were (a) made by his letter-carrier colleagues (not by Reid), (b) made outside of his presence, and (c) reported to him – long after the fact – by a former colleague. *See* Am. Compl. ¶¶ 12-13. This is insufficient. *See Lamb v. Montgomery Twp.*, No. 15-6759, 2016 WL 7426125, at *10

---

[12] Courts use Title VII's hostile-work-environment standard when evaluating claims alleging equal-protection violations. *E.g.*, *Braddock v. SEPTA*, No. CIV.A. 13-06171, 2014 WL 6698306, at *5 (E.D. Pa. Nov. 25, 2014).

(E.D. Pa. Dec. 23, 2016) (dismissing hostile work environment claim because, "[a]lthough Plaintiff testified to overhearing coworkers' comments about 'faggots' and 'gays' and to hearing from [a coworker] that similar comments were made about her, no such comment was actually directed at [p]laintiff herself," and the remaining alleged incidents were not sufficiently severe or pervasive). Doe does not allege that Reid was even aware of any of the derogatory and offensive statements at any time before Doe invoked the EEO process, and there is thus no basis for personal liability against Reid for those statements. *See Holley v. Port Auth. of New York & New Jersey*, No. 3:14-CV-7534-BRM-DEA, 2018 WL 4953008, at *2 (D.N.J. Oct. 12, 2018) (requiring "a basis for personal liability" as one element of a hostile-work-environment equal-protection claim against an individual defendant). The statements alleged to have been made by or known to Reid—only three over a five-year period, none of which relates to Doe's sex, gender, or sexual orientation—are insufficiently severe and pervasive to support a claim. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (in determining whether harassment is sufficiently severe or pervasive to create a hostile work environment, the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening . . . or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance").

Finally, to the extent that Doe purports to bring any "supervisory-liability" claim against Reid in her individual capacity, his pleading also fails. "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Abbasi*, 137 S. Ct. at 1860. Thus, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of

*respondeat superior.*" *Id.*; *see also Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs"). While personal involvement can be shown through allegations of personal direction, or of actual knowledge and acquiescence, "allegations of participation or actual knowledge and acquiescence, must be made with appropriate particularity." *Abbasi*, 137 S. Ct. at 1860. Doe's allegations that, for example, "Defendants acceded to Ms. Williams' discriminatory bias by wrongfully terminating Doe based on Ms. Williams' bias," Am. Compl. ¶ 30, thus cannot support a *Bivens* claim against Reid in the absence of specific allegations of facts supporting Doe's claims that Reid actually knew of and acquiesced in Ms. Williams' alleged bias. *See Rode*, 845 F.2d at 1207-08. Doe has made no such factual showing; indeed, his sole allegation in support of his claims about Ms. Williams' motivation—that she *once* referred to Doe as a "fruitcake," *see* Am. Compl. ¶ 22—took place *after* Doe had already been removed, *see id.*¶¶ 12, 22, and Ex. A; Postmaster General Br. Ex. 2 (ECF 19-4). This allegation thus cannot support any theory of knowledge and acquiescence on the part of Reid to any discrimination against Doe based on his sex, gender, or sexual orientation during his employment with the postal service.

In sum, Doe has not pleaded any facts supporting his theory that Reid harbored any bias against Doe based on his sex, gender, or sexual orientation. Neither has Doe pleaded any facts supporting any theory that Reid had knowledge of or acquiesced in anyone else's alleged bias on these bases against Doe. Doe has thus not stated a claim against Reid for discrimination in violation of the Fifth Amendment, and Counts I through IV against her must be dismissed on qualified immunity grounds.[13]

---

[13] Because Doe has not stated a claim against Reid for discrimination, the Court need not address the question of whether such discrimination in the employment context violates clearly established law. In prior briefing in this case, Doe argued that "[t]he right to be free from sexual

## VI.   CONCLUSION

For the reasons set forth above, Doe's claims against defendant Reid, which are set out in

Counts I through IV, must be dismissed in their entirety.

A proposed order is attached.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/ *Susan R. Becker* for
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ *Rebecca S. Melley*
REBECCA S. MELLEY
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 861-8328
Fax: (215) 861-8618
Email: rebecca.melley@usdoj.gov

Dated: June 26, 2020

---

orientation discrimination is a fundamental right established and secured firmly in the Fifth Amendment's due process and equal protection guarantees." Opp'n to Postmaster General Mot. to Dismiss Am. Compl. at 6 (ECF 20). Yet, the cases on which he relies all relate to the fundamental right of marriage. *See Obergefell v. Hodges*, 135 S. Ct. 2584, 2604 (2015); *United States v. Windsor*, 570 U.S. 744, 774 (2013); *Cozen O'Connor, P.C. v. Tobits*, No. 11-0045, 2013 WL 3878688, at *4 (E.D. Pa. July 29, 2013)). Indisputably, none of these cases arises out of a federal employment relationship. They thus do not suffice to show that "existing precedent . . . [has] placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), and that precedent has been recognized "under similar circumstances," *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted).