UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JOHN DOE,                                         :
                          Plaintiff,              :
                                                  :
            v.                                    :          No. 5:19-cv-05885
                                                  :
LOUIS DEJOY, POSTMASTER                           :
GENERAL, the U.S. POSTAL SERVICE,                 :
QIANA REID, in her individual capacity,           :
and UNKNOWN DEFENDANT NUMBER :
1, in his or her individual capacity,             :
                          Defendants.             :

_____

**O P I N I O N**
**Postmaster General/USPS' Motion to Dismiss the Amended Complaint,**
**ECF No. 19 — GRANTED**
**Qiana Reid's Motion to Dismiss the Amended Complaint,**
**ECF No. 23 — GRANTED**

**Joseph F. Leeson, Jr.**                                         **July 31, 2020**
**United States District Judge**

## I.    INTRODUCTION

In this employment discrimination action, Plaintiff John Doe[1] ("Doe") sues his former

employer, the United States Postal Service ("USPS"), U.S. Postmaster General Louis DeJoy,[2]

and his former supervisor at USPS, Qiana Reid ("Ms. Reid" or "Reid") (collectively,

"Defendants") for myriad[3] alleged violations of his civil rights.  At the heart of his suit, Doe

---

[1]      The Plaintiff has been granted leave to proceed under a pseudonym on a conditional
basis.  *See* ECF Nos. 17-18.
[2]      Doe initially named DeJoy's predecessor, Megan J. Brennan, as a Defendant.  Pursuant to
Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a
party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is
pending.  The officer's successor is automatically substituted as a party."  Therefore, the current
Postmaster General Louis DeJoy is substituted for his predecessor Megan J. Brennan.
[3]      The Amended Complaint asserts ten causes of action.  *See* ECF No. 9.

claims he was harassed and ultimately terminated based on his sexual orientation and HIV-positive status.  Before the Court is USPS and the Postmaster General's motion to dismiss the Amended Complaint, as well as Ms. Reid's motion to dismiss the Amended Complaint.  For the reasons set forth below, both motions are granted.

## II.    BACKGROUND

### A.    Facts alleged in the Amended Complaint[4]

John Doe was employed by USPS for twelve years as a letter carrier at the Allentown-Postal Road branch of USPS.  Amended Complaint ("Am. Compl.") [ECF No. 9] ¶ 2.  Doe identifies as a gay male, and alleges he was the only openly gay employee at his branch during his employment.  *Id*. ¶¶ 11, 14.  Doe states that at the time of his discharge by USPS — which, as elaborated below, he alleges was due to his sexual orientation and HIV-positive status — he was one year away from the date at which he would have been eligible for early retirement.  *Id*. ¶ 9.

In support of his claims, Doe alleges myriad instances of harassment and discrimination based on his sexual orientation.  Many of these come from text messages from John Bond ("Bond"), a current employee with USPS who was previously employed as a letter carrier at the Allentown-Postal Road branch.  *See* Am. Compl. ¶ 12.  In particular, on August 10, 2019, Bond

---

4        These facts are taken from the Amended Complaint and accepted as true, with all reasonable inferences drawn in Doe's favor.  *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018).  Except where necessary for context, the Court's recitation of the allegations of the Amended Complaint does not include conclusory assertions or legal contentions, neither of which need be considered by the Court in determining the viability of Doe's claims.  *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

sent Doe the following text messages[5] informing him of derogatory statements made by Doe's coworkers:  "Steve Wagner, said things like, '[Doe's] a sick faggot;'"  Ray Lorenz stated "Stinky is a homo," and "He's gay, dude," referring to Doe; Ray Lorenz further stated "[Doe] likes to suck big dick;" and Ms. Chamere Pedraja, a supervisor, stated to Ms. Reid, "I fucking swear to God I'm going to get his ass fired," referring to Doe.  *See id*.  Bond also informed Doe verbally in August 2019 that fellow letter carrier Bob Quirk had referred to Doe as "Glinda," a female witch from *The Wizard of Oz*.  *Id*. ¶ 13.  Additionally, Bond informed Doe via text message that Ms. Reid had made a celebratory statement at a staff meeting regarding Doe's termination; specifically, Reid "announced to the carriers that '[Doe] is finally gone, and will not be coming back.'"  *Id*. ¶ 14.

According to the Amended Complaint, Bond himself faced harassment and retaliation when he rebuffed the comments directed towards Doe by stating "[t]hat's his preference," in reference to Doe's sexual orientation.  Am. Compl. ¶ 15.  Bond informed Doe that after he made this comment, Joe Whitbeck, letter carrier and former vice president of the local union, wouldn't stop calling Bond names like "gay boy" and "dick lover," and making comments such as "[Doe] and Bond are made for each other."  *Id*. ¶ 16.

Doe also alleges the following incidents of harassment and discrimination.  Around the winter of 2014, Doe entered a room where Ms. Reid was present, at which time Doe witnessed Reid state the following to other employees:  "I'm not playing, I want him fired," referring to Doe.  Am. Compl. ¶ 17(a).  Around the winter of 2018, Mr. Hophni Masonit, another supervisor, bullied Doe by physically grabbing him on his forearm in an aggressive manner.  *Id*. ¶ 17(b).  At

---

[5]     These text messages are attached to the Amended Complaint as Exhibit A.

another point during Doe's employment, letter carrier Calvin Daly stated that he would "stick [his] foot up [Doe's] ass," and regularly made comments to Doe such as, "[h]ave they fired you yet?"  *Id.* ¶¶ 17(c)-(d).  Finally, in or around 2018, supervisor Tina Rosado took Doe aside and stated that there were complaints from other letter carriers that Doe was wearing shorts which were "too short" and "too tight."[6]  *Id.* ¶ 17(e).  Doe states he was simply wearing USPS-prescribed uniform shorts.  *Id.*

Doe states he received a Notice of Removal from employment as a letter carrier "which was made effective August 19, 2019."[7]  Am. Compl. ¶ 18.  According to USPS, Doe was terminated based upon an allegation that he physically assaulted a female coworker.  *See id.* ¶ 23. This alleged physical altercation occurred in April 2019.  *See id.* ¶ 26.  Although the Amended Complaint appears to concede that some altercation indeed took place — the allegations are somewhat ambiguous in this respect — Doe unequivocally denies the characterization of this event which he believes was the cause of his termination.  In particular, Doe claims that USPS supervisor Byrenda Wilson informed him that coworker Lisa Williams ("Ms. Williams" or "Williams") — who, Doe states upon information and belief, identifies as heterosexual — accused Doe of "putting [his] foot in her asshole," or words to that effect.  *Id.* ¶ 19.  Doe states the following with respect to this allegation:  "Any reasonable person would not believe, and no

---

[6]      Doe further states that "[u]pon information and belief, the person and/or persons who complained about [him] were heterosexual and male."  Am. Compl. ¶ 17(e).  By way of example, Doe states that he recollects at some point during his employment Calvin Daly telling him that his "shorts were too tight," and that "[u]pon information and belief, Mr. Calvin Daly is heterosexual and/or not openly gay."  *Id.* ¶ 17(f).

[7]      Doe does not highlight it as part of his pleadings because it undermines his position as to the timeliness of his contact with an Equal Employment Opportunity counselor, but USPS points out that the Notice of Removal, which is attached to its motion to dismiss, is dated June 12, 2019, Doe received it on June 14, 2020, and the Notice states an effective date of July 20, 2019. *See* USPS' Memorandum in Support of its Motion to Dismiss ("USPS Mem.") [ECF No. 19-1], Exhibits 2-3.

investigation ever conducted by Defendants ever concluded, that Doe – a gay man – put his foot inside this woman's anal cavity.  Doe was completely repulsed by the allegation."  *Id*.  According to the Amended Complaint, Williams changed or shifted her story after the Notice of Removal was issued to Doe, inasmuch as Williams then stated Doe "kicked her like a football," an allegation which Doe also denies.  *Id*. ¶ 20.

As a result of the allegation of the event that transpired between Doe and Williams, local police were notified and Doe was charged with the summary offense of harassment.  Am. Compl. ¶ 23.  However, on November 12, 2019, Doe was "found not guilty" and the case against him was dismissed.  *Id*.  "At this point," according to Doe, "although the allegation was unfounded, it was too late as [he] was already terminated for the allegation."  *Id*.

Doe claims that Williams harbored bias against him based on his sexual orientation and/or gender stereotyping, and that the allegation lodged against Doe by Williams was a result of this bias.  Am. Compl. ¶¶ 22-23.  According to Doe, this is evidenced by a text message from John Bond to Doe, in which Bond stated that letter carrier Mike Hine had verbalized to Bond that Williams had stated as follows:  "Yeah, I'm so glad they finally got rid of that fruitcake."[8]  *Id*.

In further support of Doe's claim that his alleged assault of Ms. Williams was fabricated out of bias towards him, Doe states that on April 20, 2019, Williams and Doe "were initially pulled into the office together, it was decided that no action would be taken at that time, and then both individuals were returned to the floor without any issue."  Am. Compl. ¶ 24.  Moreover, he claims that it took Williams approximately four to six days to report Doe to the police, and it

---

[8]     The full text message is attached to the Amended Complaint as part of Exhibit A.

took management "fifty-three (53) days to issue a Notice of Removal, and forty (40) days to conduct a pre-disciplinary interview or investigate [Doe]." *Id.* ¶¶ 25-26.

In further support of his claim that his termination was the result of bias, Doe alleges that he was penalized much more harshly than other similarly situated employees who, according to Doe, were not gay. Am. Compl. ¶ 27. Doe gives the examples of (1) Mr. Hophni Masonit, who Doe states "bullied" Doe by "physically grabbing [him] on his forearm," and who Doe states was not punished in any manner, *id.* ¶ 27(a); (2) Ms. Williams, who, according to text messages from John Bond, pushed Bond on several occasions and was not punished in any manner, *id.* ¶ 27(b); (3) Ms. Reid, who Doe states "put her hands on [coworker] Nancy Toledo" and was not punished in any manner, *id.* ¶ 27(c); (4) "Mr. James M.," who Doe states "allegedly poked [Bond] in the eye in or around October 2001" and who was not terminated following arbitration, *id.* ¶ 27(d); (5) "Mr. Joseph Whitbeck," who Doe claims "allegedly pushed a supervisor in or around December 2011, and was suspended, but was not terminated," *id.* ¶ 27(e); (6) "Mr. Norman L," who Doe states "allegedly spit on someone, and also allegedly pushed an employee, but was not terminated," *id.* ¶ 27(f); (7) "Two (2) female Letter Carriers," who Doe states fought each other outside the Post Office; their removals "were not made effective," and they were allowed to "take their cases to arbitration" unlike Doe, *id.* ¶ 27(g); (8) "Mr. Warren K.," who Doe states allegedly lost his driver's license due to driving under the influence, but who was allowed to keep his job, *id.* ¶ 27(h); and (9) "Mr. Dennis G.," who Doe claims was allegedly intoxicated on the job, "but was given his job back," *id.* ¶ 27(i).

Doe also claims that, in addition to his sexual orientation, his treatment and eventual termination were due to bias towards him as a result of his HIV-positive status. *See* Am. Compl. ¶¶ 134-46. He states that "[u]pon information and belief, Defendants, including Doe's direct

managers/supervisors, had knowledge about and were aware that Doe is HIV-positive." *Id.* ¶
136.  In particular, Doe states he "recollects that a medical record submitted by Doe to
management regarding the range of motion of Doe's wrist indicated, in the same medical record,
that Doe is HIV-positive, and this was inadvertently shared with management at the time." *Id.*
As far as negative treatment he suffered because of his HIV-positive status, Doe points to two
derogatory statements:  (1) John Bond's text message indicating that one of Doe's coworkers
referred to Doe as a "sick faggot," which Doe claims "can relate to [his] HIV-positive status," *id.*
¶¶ 137-38; and (2) his receipt of "an additional text message from current employee, John Bond,
from USPS letter carrier, Mike Hine, on or about December 18, 2019, which stated 'If he wins,
I'll refuse to work near AIDS boy,'" *id.* ¶ 139.

        As to the events that transpired after his receipt of the Notice of Removal, Doe claims he
"exhausted his Collective Bargaining Agreement's ('CBA's) negotiated grievance procedure,
exhausted his Step A and Step B appeals, and requested arbitration although the union denied
those requests and made clear to Doe that they will not be pursuing arbitration in this case."  Am.
Compl. ¶ 89.  Doe also states he "made contact with an [Equal Employment Opportunity
("EEO")] counselor on September 9, 2019, after receiving the Step B decision, which stated that
'the effective date of the removal shall be August 19, 2019.'"[9]  *Id.* ¶ 71.  He moreover states that

---

[9]        At issue in this suit is whether Doe timely initiated EEO contact under the appropriate
regulations.  USPS states that "Doe was required to initiate EEO contact by July 29, 2019 (45
days after Doe received the Notice of Removal) or, at the very latest, September 3, 2019 (45 days
after the effective date stated in the Notice of Removal). Yet, Doe did not initiate EEO contact
until after both of those dates had passed, on September 9, 2019."  USPS Mem. at 17.  Appearing
to predict this argument, Doe states in the Amended Complaint that he "was actually told his
removal shall not be effective until a later time rather than July 29, 2019.  The effective date of
the action under 29 C.F.R. § 1614.105(a)(1) is August 19, 2019 which is the actual date removal
was fixed."  Am. Compl. ¶ 71.

he is filing the instant action "within 90 days of receipt of the Equal Employment Opportunity Commission's final decision on an appeal from the agency's EEO decision."[10]  *Id.* ¶ 73.

Based on the above factual allegations, Doe purports to assert the following ten causes of action:[11]  (I) wrongful discharge based on sexual orientation in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution; (II) wrongful discharge based on sex, gender, and/or gender stereotyping in violation of the Due Process Clause of the Fifth Amendment; (III) hostile work environment based on sexual orientation in violation of the Due Process Clause of the Fifth Amendment; (IV) hostile work environment based on sex, gender, and/or gender stereotyping in violation of the Due Process Clause of the Fifth Amendment; (V) wrongful discharge based on sex, gender, and/or gender stereotyping in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (VI) hostile work environment based on sex, gender and/or gender stereotyping in violation of Title VII; (VII) wrongful discharge based on sexual orientation in violation of Title VII; (VIII) hostile work environment based on sexual orientation in violation of Title VII; (IX) wrongful discharge based on disability in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"); and (X) hostile work environment based on disability in violation of Section 504.

---

[10]     USPS points out "[t]his allegation is simply wrong, as evidenced by his Exhibit B [to the Amended Complaint] which is *not* a decision of the Equal Employment Opportunity Commission ('EEOC')."  USPS Mem. at 24 (emphasis in original).  USPS continues, "the document attached to the Amended Complaint as Exhibit B is not the EEOC's final decision, nor is it any decision of the EEOC at all. Instead, it is *the agency* [USPS] *EEO's* dismissal of Doe's formal EEO complaint in light of Doe's simultaneous filing of an employment-discrimination complaint in this Court."  *Id.* (emphasis in original).
[11]     In listing Doe's claims here, the Court does not endorse or accept that they are viable. Throughout this Opinion, the Court uses "claims," "counts," and "causes of action" interchangeably.  The Court additionally notes that Claims I – IV are brought against USPS, the Postmaster General, and Qiana Reid, while Claims V – X are brought against USPS and the Postmaster General, and not Ms. Reid.

**B.** **Procedural background**

On December 13, 2019, Doe filed the initial Complaint in this action along with a motion for leave to proceed in his suit anonymously by use of a pseudonym. *See* ECF Nos. 1-2. On December 17, 2019, the Court denied his motion to proceed anonymously without prejudice and with leave to re-file after service had been effected and after Doe's counsel conferred with Defendants' counsel regarding the substance of the motion. *See* ECF No. 4. Service was subsequently effected on USPS, which filed a motion to dismiss the initial Complaint on February 14, 2020. *See* ECF No. 8. In response to USPS' motion, Doe filed an Amended Complaint on February 28, 2020. *See* ECF No. 9. The Court subsequently granted a request from USPS for an extension of time to respond to the Amended Complaint. *See* ECF Nos. 13, 16.

Doe filed a second motion to proceed anonymously on March 9, 2020. *See* ECF No. 14. On April 27, 2020, the Court issued an Opinion and Order granting the motion for leave to proceed under the pseudonym "Doe" on a conditional basis. *See* ECF Nos. 17-18.

USPS filed its motion to dismiss the Amended Complaint on May 4, 2020. *See* ECF No. 19. Around this time, the Office of the United States Attorney, who had already appeared on behalf of USPS and the Postmaster General, agreed to represent Defendant Qiana Reid. On June 26, 2020, the U.S. Attorney, on behalf of Ms. Reid, moved to dismiss the Amended Complaint. *See* ECF No. 23.

C.      **The arguments of the parties**

1.      *USPS' motion to dismiss*

a.      **USPS' arguments for dismissal[12]**

In moving to dismiss the Amended Complaint, USPS first argues that the Court should

dismiss outright Doe's first four claims, which are brought directly under the Due Process Clause

of the Fifth Amendment.  According to USPS, Title VII of the Civil Rights Act of 1964 and

Section 504 of the Rehabilitation Act of 1973 are the exclusive remedies of federal employment

discrimination claims.  *See* USPS Mem. at 10-11.  USPS then argues that there is no cognizable

remedy for discrimination based on sexual orientation under Title VII[13] — the absence of which

does not, according to USPS, alter the exclusivity of Title VII as a remedy for federal

employment discrimination claims.  *See id*. at 12-13.  USPS also contends that any claims

against the Postmaster General in an individual capacity must be dismissed because there is no

alleged personal involvement on behalf of the Postmaster General, and "[a]ctions for money

damages against the federal government may be brought only against individuals whose own

actions violated the Constitution."  *Id*. at 14.

---

[12]     For reasons discussed below, Doe's claims against the Postmaster General in his
individual capacity fail as a matter of law.  To the extent Doe sues the Postmaster General in his
official capacity, such a suit is duplicative of his suit against USPS; that is, the Postmaster
General in his official capacity and USPS are the same entity.  *See Kentucky v. Graham*, 473
U.S. 159, 165-66 (1985) ("[O]fficial-capacity suits 'generally represent only another way of
pleading an action against an entity of which an officer is an agent.'" (quoting  *Monell v. Dept. of
Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)).  The Court therefore refers only to USPS
except where necessary for clarity or where the distinction is relevant.

[13]     While this point may or may not have been correct at the time USPS' brief was filed, it is
not correct following the Supreme Court's recent decision in *Bostock v. Clayton Cty., Georgia*,
140 S. Ct. 1731 (2020), which recognized that Title VII's prohibitions cover discrimination
based on sexual orientation and gender identity.

Doe's remaining six claims must be dismissed, according to USPS, for Doe's failure to exhaust administrative remedies.  In particular, USPS claims that Doe (1) failed to timely initiate EEO contact within the prescribed 45 days, and (2) failed to wait 180 days before filing suit in this Court.

With respect to the first exhaustion argument, USPS contends that Doe's Notice of Removal, which was dated June 12, 2019 and received by Doe on June 14, 2019, "unambiguously states an effective date of July 20, 2019."  USPS Mem. at 16.  Therefore, according to USPS, "Doe was required to initiate EEO contact by July 29, 2019 (45 days after Doe received the Notice of Removal) or, at the very latest, September 3, 2019 (45 days after the effective date stated in the Notice of Removal)."  *Id*. at 17.  USPS contends that Doe's failure to do so requires that his Title VII and Section 504 claims be dismissed with prejudice.  *Id.*  As to Doe's claim that August 19, 2019 was the operative effective date because it was the effective date of removal in the "Step B Decision" rendered in the course of Doe's union grievance process, USPS argues that such determinations do not toll EEO timing requirements, and, more generally, neither equitable tolling nor waiver of EEO timing requirements is applicable here. *See id*. at 18-20.

With respect to the second exhaustion argument, USPS contends Doe was required to wait a minimum of 180 days after his formal EEO complaint had been pending without final decision before filing the instant lawsuit, and his failure to do so "eliminate[ed] the opportunity for the USPS to evaluate his claims administratively," requiring the Court to dismiss his action. USPS Mem. at 23.  Indeed, USPS points out that Doe filed his complaint with this Court on *the very same day* he filed his formal EEO complaint.  *See id*. at 21.  Moreover, USPS contends that the dismissal of Doe's EEO complaint does not change the analysis, as the dismissal was based

solely on his premature initiation of this lawsuit.[14]  *See id.* at 22.  On this point, USPS states that "[t]he administrative process—which could be reinstated if this Court dismisses this action without prejudice for failure to exhaust administrative remedies—should be allowed to proceed (but only if the Court does not dismiss Doe's Title VII and Rehabilitation Act claims with prejudice for other reasons)."  *Id.* at 9.

Finally, USPS attacks the sufficiency of Doe's pleadings,[15] contending that Doe's discrimination and hostile work environment claims based on disability must be dismissed because there are simply no plausible allegations to support them.  *See* USPS Mem. at 26-31.

### b.    Doe's arguments in opposition

Doe first challenges what he sees as "a lack of protection for sexual orientation under Title VII."  Doe's Memorandum in Opposition to USPS' Motion ("Doe Opp'n. I") [ECF No. 20] at 9.  He contends that if Title VII does not recognize protections against discrimination based on sexual orientation — a point with which he disagrees and is now moot in light of the Supreme Court's holding in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020), as discussed further below — this Court should recognize a *Bivens*[16] action based on the Fifth Amendment to

---

[14]     On January 6, 2020, USPS EEO dismissed Doe's EEO complaint on the grounds that on December 13, 2020 — the same date he filed his formal EEO complaint — he initiated this lawsuit.  *See* Am. Compl., Ex. B.  The decision of dismissal explains that "[t]he Commission has long held that an employee cannot use the EEO complaint process to lodge a collateral attack on another forum's proceedings."  *Id.* at 2.  Noting Doe's filing of this lawsuit, the decision states that it is the "Agency's contention that [Doe] should be barred from pursuing the current complaint administratively," as the claims raised in Doe's lawsuit "are inextricably intertwined with those raised" in his EEO complaint.  *Id.*

[15]     USPS also argues that any claims for punitive damages must be dismissed because punitive damages are not available against federal defendants under Title VII and the Rehabilitation Act.  *See* USPS Mem. at 26.

[16]     A so-called *Bivens* action or *Bivens* remedy refers to a judicially-recognized implied right of action against federal actors for the redress of violations of federal constitutional rights where no explicit statutory right of action exists.  *See Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

accomplish as much.  *Id.* at 11.  This is so, he contends, because "[n]o Supreme Court opinion holds directly that Federal employees may not bring Bivens actions for employment discrimination claims when they are unprotected by statute."[17]  *Id.*

Next, Doe opposes dismissal of his claims as against the Postmaster General, because "even if this Court dismisses Doe's constitutional claims for money damages against the Postmaster General," he "seeks to still pursue equitable remedies including" but not limited to "reinstatement, back pay and benefits, attorneys' fees and costs, policy revisions[,] and training." Doe Opp'n. I at 16.  Doe moreover contends that "it is difficult to imagine how the Postmaster General, or otherwise someone with decision making authority, did not have a role in Doe's termination," and he declines to "concede at this stage" that the Postmaster General was not personally involved in Doe's termination.[18]  *Id.*

With regard to the first of USPS' two contentions as to Doe's alleged failure to exhaust his administrative remedies — in particular that Doe failed to initiate EEO contact within 45 days of the date of his Notice of Removal or its effective date — Doe states that USPS' argument that the earlier of the two effective dates is the correct date is "untenable because an effective date is a date on which something is to become effective – if the effective date is extended, the date at which something is to become effective is therefore extended.  There is *one* effective date.  There cannot be *two* effective dates."  Doe Opp'n. I at 18 (emphasis in original).  Doe claims that August 19, 2019 — the date he states was contained in the Step B decision — is the relevant and proper "effective" date.  *Id.*  However, to the extent it is necessary, Doe also

---

[17]      As discussed in detail below, this contention is simply incorrect.  *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976).

[18]      Doe also argues that USPS advised counsel that the "only proper defendant to [Title VII and Rehabilitation Act] claims is the head of the USPS, the Postmaster General, in her official capacity."  Doe Opp'n. at 17.

contends that he is entitled to equitable tolling because he "did not receive or know about the text messages calling him, among other things, 'sick faggot,' and stating that Ms. Williams . . . had called Doe a 'fruitcake' until August 10, 2019." *Id*. at 20.

As to USPS' second exhaustion argument — that Doe failed to wait 180 days after his EEO complaint had been pending without decision before filing suit — Doe simply states that "Defendant admits that dismissal with prejudice is not appropriate solely on the basis of Doe failing to wait 180 days before filing suit." Doe Opp'n. I at 22.  According to Doe, "Defendant admits that sending the matter back for future administrative processing would be more appropriate, unless this Court can find another independent reason . . . that the matter should be dismissed."[19]  *Id*.

Finally, Doe argues that he has sufficiently pleaded facts supporting that his harassment and eventual termination were causally related to his HIV-positive status, and that accordingly he has made out claims of hostile work environment and discrimination based on disability.  *See* Doe Opp'n. I at 23-28.

### c.     USPS' rebuttal arguments

In its short reply memorandum, USPS reasserts its contentions that no *Biven*'s remedy exists for Doe's Fifth Amendment claims.  USPS' Memorandum in Reply ("USPS Reply") [ECF No. 21] at 2.  USPS also contends that "Doe concedes that he failed to exhaust administrative remedies, and his Title VII and Rehabilitation Act claims therefore must be dismissed."  *Id*. at 7. Moreover, according to USPS, none of the circumstances warranting equitable relief that might allow a litigant to bypass the 180-day period are present here.  *Id.* at 7-8.  On this basis, USPS

---

[19]       *See* USPS Mem. at 9, 23.

asks the Court to dismiss Doe's remaining claims without prejudice and allow "the administrative process . . . to continue."  *Id.* at 8.

### 2. *Qiana Reid's motion to dismiss*

#### a. **Reid's arguments for dismissal**

As with USPS, Reid's primary argument with respect to the claims asserted against her, Counts I – IV of the Amended Complaint, is that Title VII provides the exclusive remedies for claims of employment discrimination in federal employment.  *See* Reid's Memorandum in Support of her Motion to Dismiss ("Reid Mem.") [ECF No. 23-1] at 6-8.  Because Counts I – IV are purported *Bivens* claims asserted directly under the Constitution where Title VII controls, Reid asserts these claims must be dismissed.  *See id.*  Reid moreover claims that "additional reasons also require" the dismissal of Claims I – IV:  in particular, the movement away from *Bivens* remedies in recent jurisprudence.[20]  *See id.* at 9-12.

#### b. **Doe's arguments in opposition**

In opposition to Ms. Reid's motion, Doe first contends that because "[t]he events in this case occurred before the <u>Bostock</u> decision was issued on June 15, 2020," and because "<u>Bostock</u> did not address retroactivity," "[t]his Court should do so."  Doe's Memorandum in Opposition to Reid's Motion to Dismiss ("Doe Opp'n. II") [ECF No. 24] at 8.  According to Doe, "[t]he Fifth Amendment exists as a remedy if <u>Bostock</u> is not retroactive."  *Id*. at 4.

Doe also contends that this Court is further required to address "whether gender stereotyping of heterosexuality is a covered claim under Title VII."  Doe Opp'n. II at 9. According to Doe, he "has clearly pled his Title VII claims at Counts VI and VII as claims of

---

[20]     Reid also argues that even if the Court implied a *Bivens* remedy and allows the claims against her to proceed, she is entitled to qualified immunity.  *See* Reid Mem. at 12-19.

'gender stereotyping' and not 'sexual orientation. . . . At Counts VIII and IX is where Plaintiff then pled his Title VII claims of harassment/hostile work environment, and wrongful discharge, on account of 'sexual orientation' *per se*."[21]  *Id*. at 8-9.  According to Doe, the Court must decide "whether heterosexuality is a gender norm and being LGBT is an exception, and whether such a claim is a covered claim under Title VII."[22]  *Id*. at 9.

### c.    Reid's rebuttal arguments

In a short reply memorandum, Ms. Reid contends that nothing in Doe's opposition brief "provides a basis for Reid, an individual *Bivens* defendant, to remain in this action.  She must be dismissed under the doctrine of *Brown v. General Services Administration*, 425 U.S. 820 (1976), in light of Title VII remedies available to former federal employees."  Reid's Memorandum in Reply ("Reid Reply") [ECF No. 25] at 1.  She contends that "Doe himself recognizes the exclusivity of Title VII's procedures and remedies in repeatedly conceding that this action should be 'sent back for future administrative processing at the EEO level' assuming his discrimination claims are within the scope of Title VII."  *Id*. at 4.

---

[21]     The Court assumes here that Doe intended to refer to Counts V and VI as his "gender stereotyping" claims rather than Counts VI and VII, and Counts VII and III as his "sexual orientation" claims rather than Counts VIII and IX, as this comports with the headings of the claims in the Amended Complaint.

[22]     This is so according to Doe as "[t]he gender stereotyping theory of [*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)] was not specifically referenced anywhere in <u>Bostock</u> as relevant to the majority opinion's holding" despite being "advanced as a theory of the plaintiffs in the three consolidated cases under <u>Bostock</u>."  Doe Opp'n. II at 9.  Doe states that "[i]f the Court . . . extends Title VII to the gender stereotyping theory of heterosexuality, then it may be appropriate to send this matter back for future administrative processing."  *Id*. at 13.  "If not," then Doe argues, "there is a Fifth Amendment claim which clearly applies to this form of sexual-orientation discrimination."  *Id*.

Doe also argues that his allegations as to Ms. Reid's involvement in the alleged harassment and eventual termination are sufficiently pleaded to overcome any assertion of qualified immunity at this point in the litigation.  *See id*. at 17-18.

As to the scope of Title VII in light of *Bostock*, Reid acknowledges that "sexual-orientation discrimination claims and gender-stereotyping discrimination claims are both within the scope of Title VII's phrase 'because of . . . sex.'"[23]  Reid Reply at 2.  She further contends that "a retroactivity analysis . . . is not necessary in order to apply *Bostock* here because the Supreme Court did not create new law but defined the term 'sex' in an existing statute."  *Id*. at 3.  Specifically, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."  *Id*. (quoting *Rivers v. Roadway Exp., Inc*., 511 U.S. 298, 312-13 (1994)).

---

[23]       In particular, Reid — correctly — clarifies that

[i]n 2001, the Third Circuit held in *Bibby v. Coca Cola Bottling Co*., 260 F.3d 257, 264 (3d Cir. 2001), following *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), that gender-stereotyping provided one way to establish discrimination because of "sex" within the meaning of Title VII. At the same time, the Third Circuit distinguished claims based on sexual orientation and held that they were outside the scope of Title VII. *Id*. at 264-65. This Term, in *Bostock v. Clayton County, Georgia*, No. 17-1618, ---S. Ct. ---, 2020 WL 3146686, at *3 (U.S. June 15, 2020), the U.S. Supreme Court held, contrary to that portion of *Bibby*, that Title VII prohibits employment discrimination on the basis of sexual orientation.

Despite Doe's suggestion otherwise, *see* Opp'n at 9-10, in including sexual orientation within the definition of "sex" in Title VII, the Supreme Court in *Bostock* did not somehow undermine gender stereotyping as a way of proving sex-based discrimination. *See, e.g., Bostock*, 2020 WL 3146686 at *8 ("So just as an employer who fires both Hannah and Bob for failing to fulfill traditional sex stereotypes doubles rather than eliminates Title VII liability, an employer who fires both Hannah and Bob for being gay or transgender does the same."); . . . . And, of course, the Supreme Court's *Bostock* ruling need not have addressed *Bibby*, *see* Opp'n at 8, 14, in order to abrogate *Bibby*'s holding regarding sexual-orientation discrimination. *Rivers v. Roadway Exp., Inc*., 511 U.S. 298, 312 (1994) ("It is [the Supreme Court's] responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law."). It is puzzling indeed that Doe argues otherwise, seemingly urging this Court to narrow the scope of Title VII in relation to sexual-orientation and gender-stereotyping claims.

Reid Reply at 2-3.

### III.     LEGAL STANDARD:  MOTIONS TO DISMISS UNDER RULE 12(b)(6)

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the appropriate

pleading standard in federal civil actions and set forth a two-step approach to be used when

deciding motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim.

First, district courts are to "identify [ ] pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679; *see id.* at 678

("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)));

*Thourot v. Monroe Career & Tech. Inst*., No. CV 3:14-1779, 2016 WL 6082238, at *2 (M.D. Pa.

Oct. 17, 2016) (explaining that "[a] formulaic recitation of the elements of a cause of action"

alone will not survive a motion to dismiss).  Though "legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at

679.

Second, if a complaint contains "well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id*. at 678.  This standard, commonly referred as the "plausibility

standard," "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully."  *Id*. (citing *Twombly*, 550 U.S. at 556-57).  It is only

where the "[f]actual allegations . . . raise a right to relief above the speculative level" that the

plaintiff has stated a plausible claim.[24]  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

Putting these steps together, the Court's task in deciding a motion to dismiss for failure to state a claim is to determine whether based upon the facts as alleged, which are taken as true, and disregarding legal contentions and conclusory assertions, the complaint states a claim for relief that is plausible on its face.  *Iqbal*, 556 U.S. at 679; *Ashford v. Francisco*, No. 1:19-CV-1365, 2019 WL 4318818, at *2 (M.D. Pa. Sept. 12, 2019) ("To avoid dismissal under Rule 12(b)(6), a civil complaint must set out sufficient factual matter to show that its claims are facially plausible.").[25]

Lastly, the Court notes that in adjudicating a Rule 12(b)(6) motion, the scope of what may be considered is necessarily constrained:  A court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[26]  *United States v. Gertsman*, No. 15-8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)).

---

[24]    As the Supreme Court counseled, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679

[25]    Although the Court does not reach the issue of the sufficiency of Doe's allegations for reasons discussed below, it is worth noting that plaintiffs alleging claims of discrimination do not need to plead each prima facie element of such claims to survive a motion to dismiss.  *See Dreibelbis v. Cty. of Berks*, No. 5:19-cv-494, 2020 WL 605884, at *7 (E.D. Pa. Feb. 7, 2020); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).  Rather, discrimination plaintiffs need only state "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim's] necessary element[s]."  *Dreibelbis*, 2020 WL 605884, at *7 (quoting *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

[26]    Additionally, a court adjudicating a Rule 12(b)(6) motion may take judicial notice of certain undisputed facts.  *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

IV.      **ANALYSIS**

A.      **Doe's claims asserted directly under the Constitution (Claims I – IV):  Title VII provides the near-exclusive remedy for federal employees to seek redress for discrimination in their employment**

The threshold question the Court must address is whether there is any basis to allow Doe to proceed on his claims brought directly under the Fifth Amendment — *i.e.*, his first four causes of action.  Significantly, and contrary to Doe's contentions, this inquiry is independent of the scope of Title VII with respect to gender-stereotyping discrimination claims post-*Bostock*.[27]

The simple and clear-cut answer to this question is no:  Doe's first four claims are completely barred by Title VII.  As Defendants correctly point out, it is settled law that Title VII provides the near-exclusive avenue for federal employees to seek redress of discrimination in their employment.[28]  The Supreme Court settled this issue in *Brown v. Gen. Servs. Admin.*, 425 U.S. 820 (1976).  In that case, the Court explained as follows:

> The legislative history [of Title VII] thus leaves little doubt that Congress was persuaded that federal employees who were treated discriminatorily had no effective judicial remedy. And the case law suggests that that conclusion was entirely reasonable. Whether that understanding of Congress was in some ultimate sense incorrect is not what is important in determining the legislative intent in amending the 1964 Civil Rights Act to cover federal employees. For the relevant inquiry is not whether Congress correctly perceived the then state of the law, but rather what its perception of the state of the law was.
>
> This unambiguous congressional perception seems to indicate that the congressional intent in 1972 was to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination. We need not, however, rest our decision upon this inference alone. For the structure of the

---

[27]      Doe claims that "[t]he Fifth Amendment must exist as a remedy if <u>Bostock</u>" does not offer Doe a certain remedy under Title VII.  Doe Opp'n. II at 8.  This is incorrect.

[28]      Although Doe does not assert claims for disability-based discrimination in his first four causes of action, similar to Title VII, "the Rehabilitation Act—with prior exhaustion of remedies—is the exclusive means by which a plaintiff may raise claims against federal agencies relating to handicap discrimination."  *Spence v. Straw*, 54 F.3d 196, 197 (3d Cir. 1995).

1972 amendment itself fully confirms the conclusion that Congress intended it to
be exclusive and pre-emptive.

*Id*. at 828-29.

There is no indication that *Brown*'s holding is no longer good law; in fact, the opposite is

true.  *See Wilson v. United States Postal Serv.*, No. 19-1530, 2020 WL 3168511, at *2 (3d Cir.

June 15, 2020) ("Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, and the

regulations promulgated thereunder, create 'the exclusive remedy for federal employees who

allege discrimination in the workplace.'" (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020-21

(3d Cir. 1997))); *Niculcea v. Stone Ridge Towne Ctr.*, No. 1:17-CV-02096, 2019 WL 1338915,

at *4 (M.D. Pa. Mar. 7, 2019) ("Title VII of the Civil Rights Act of 1964 establishes the

exclusive remedy for federal employees who allege discrimination in the workplace." (quoting

*Robinson*, 107 F.3d at 1020-21)), *report and recommendation adopted*, No. 1:17-CV-2096, 2019

WL 1330362 (M.D. Pa. Mar. 25, 2019); *Kannikal v. Attorney Gen. U.S.*, 776 F.3d 146, 151 (3d

Cir. 2015) ("'The Supreme Court has emphasized that Title VII provides 'an exclusive, *pre-*

*emptive* administrative and judicial scheme for the redress of federal employment

discrimination.'" (emphasis in original) (quoting *Brown*,  425 U.S. at 829)); *Owens v. United*

*States*, 822 F.2d 408, 409-10 (3d Cir. 1987) ("The district court determined that Owens's federal

constitutional and statutory claims against Lowe are completely barred. We agree with this

determination. Interpretation of Title VII has shown that Title VII provides federal employees a

remedy that 'precludes actions against federal officials for alleged constitutional violations as

well as actions under other federal legislation.'" (quoting *Kizas v. Webster*, 707 F.2d 524, 542

(D.C. Cir. 1983))).  Nor does Doe provide any explanation as to why this Court should deviate from *Brown* and its well-settled holding.[29]

While this settles the issue, it is worth noting that if the issue weren't settled by Title VII's unambiguous preemptive effect, this Court would still be highly skeptical of implying a *Biven*'s remedy.  *See Vanderklok v. United States*, 868 F.3d 189, 206 (3d Cir. 2017) ("The critical question is who should decide whether to provide for a damages remedy, Congress or the courts? Most often, the answer is Congress. Because, [w]hen an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." (internal quotations and citations omitted)).  Nor would the absence of a remedy under Title VII — which is not the case here, as discussed more fully below — automatically demand of this Court the recognition of a *Biven*'s remedy.  *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (explaining that "even in the absence of an alternative [remedy], a *Bivens* remedy is a subject of judgment" (internal citation omitted)); *see also Meshal v. Higgenbotham*, 804 F.3d 417, 425 (D.C. Cir. 2015) (refusing to imply a *Bivens* remedy, even where the government admitted the plaintiff had no alternative remedy).

For the reasons set forth above, Claims I – IV of the Amended Complaint necessarily fail as a matter of law.  They are dismissed, with prejudice, against all Defendants.[30]

---

[29]    Indeed, Doe's failure to even confront the holding of *Brown* is illustrative — Doe references *Brown* once in passing in his opposition to USPS' motion, and not at all in opposition to Reid's motion.
[30]    Because these were the only claims asserted against Reid, she is dismissed from the lawsuit.

**B.      Doe's remaining claims (Claims V – X)**

*1.      Individual-capacity Defendants*

Before turning to the viability of Doe's remaining claims, it is worth sorting out who is a proper Defendant with respect to these claims.  From what the Court can tell, Doe asserts his Title VII and Section 504 discrimination claims against three Defendants:  USPS, the Postmaster General in his individual capacity, and "Unknown Defendant Number 1"[31] in his or her individual capacity.  *See* Doe Opp'n. I at 2.  However, Doe's suit of individual-capacity defendants is not proper:  "The Third Circuit Court of Appeal's disposition on individual liability under Title VII is clear—Congress did not intend to enact individual liability with this statute." *Slater v. Susquehanna Cty.*, 613 F. Supp. 2d 653, 662 (M.D. Pa. 2009) (citing *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 184 (3d Cir. 1997) and *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996)), *aff'd*, 465 F. App'x 132 (3d Cir. 2012).[32]  The same can be said for individual liability under the Rehabilitation Act.  *See Datto v. Harrison*, 664 F. Supp. 2d 472, 493 (E.D. Pa. 2009);[33]  *Zied-Campbell v. Richman*, No. CIV.A. 1:04-CV-0026,

---

[31]      The Court takes this language from the caption of the Amended Complaint.

[32]      As for why this construction of Title VII prevails, the Third Circuit explained as follows:

> In our independent examination of this issue, we find most significant the fact that when Congress amended the statute in 1991 to provide a detailed sliding scale of damages ranging from $50,000 for an employer of more than 14 and fewer than 101 employees, to $300,000 for employers with more than 500 employees, 42 U.S.C. § 1981a(b)(3), it made no reference as to the amount of damages, if any, that would be payable by individuals. This strongly suggests that Congress did not contemplate that such damages would be assessed against individuals who are not themselves the employing entity.

*Sheridan*, 100 F.3d at 1077.

[33]      [T]he Rehabilitation Act is an exercise of Congress' constitutional spending power, conditioning the receipt of federal money on the recipient abiding by specified conditions. As such, the conduct for which liability may be imposed under the Act is informed by contract law principles. In this case, the "program or activity

2007 WL 1031399, at *17 (M.D. Pa. Mar. 30, 2007) ("[G]enerally officials may not be held

liable in their individual capacities under Title II of the ADA or Section 504 of the Rehabilitation

Act."), *aff'd*, 428 F. App'x 224 (3d Cir. 2011); *J.F. v. Sch. Dist. of Philadelphia,* 2000 WL

361866, at *17 (E.D.Pa. Apr. 7, 2000) (finding that Section 504 does not permit individual

liability).

    Consequently, Doe's Title VII and Section 504 claims brought against the Postmaster

General in his individual capacity, as well as the same claims brought against "Unknown

Defendant Number One" in his or her individual capacity, are dismissed from the Amended

Complaint, with prejudice.[34]

### 2. *The recent decision in* Bostock v. Clayton Cty., Georgia

    With respect to the viability of Doe's remaining claims, in light of his arguments in

opposition to Defendants' motions the Court is obliged to address at the outset the applicability

and scope of the Supreme Court's holding in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731

(2020).

---

    receiving Federal financial assistance," from which the plaintiff contends he was
excluded is Jefferson's M.D./Ph.D. program. The party receiving federal funds for
that program, and thereby accepting the contract-like obligations of the
Rehabilitation Act, is Jefferson. The plaintiff does not allege, nor could he
reasonably have alleged, that any of the individual defendants received federal
money for that program.

*Datto*, 664 F. Supp. 2d at 493 (internal citation omitted).

[34]    Additionally, as noted previously, "official-capacity suits generally represent only
another way of pleading an action against an entity of which an officer is an agent." *Monell v.
Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). As such, all claims
against the Postmaster General in his *official* capacity are duplicative of the same claims against
USPS, and vice versa. Although the Court will not formally dismiss either party from the suit at
present, should Doe bring a successive suit, he is directed to assert his claims against one or the
other, not both.

First, contrary to Doe's contentions, this Court does not need to determine *Bostock*'s "retroactivity." Doe Opp'n. II at 8-9. As Reid explains in her reply memorandum with respect to retroactivity, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Reid Replay at 3 (quoting *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-13 (1994)); *see United States v. Peppers*, 899 F.3d 211, 230 (3d Cir. 2018) (explaining that "when the Supreme Court 'construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.' In short, those decisions interpreting the ACCA are not new law at all" (quoting *Rivers*, 511 U.S. at 313 n.12)). Moreover, as Reid also points out, the holding in *Bostock* is, at present, being applied as the authoritative construction of Title VII with respect to discrimination based on sexual orientation and gender identity. *See, e.g.*, *Horton v. Midwest Geriatric Mgmt., LLC*, 963 F.3d 844, 847 (8th Cir. 2020) ("In light of [*Bostock*'s holding], our contrary conclusion in *Williamson* is no longer good law."); *Hannah v. Westrock Servs., Inc.*, No. 1:18-CV-00160, 2020 WL 4227327, at *1 (W.D.N.C. July 23, 2020) ("[T]he Fourth Circuit granted the parties' consent motion to remand, and this matter was remanded to this Court for further proceedings consistent with the *Bostock* decision.").

Similarly without merit is Doe's contention that this Court must determine whether, in light of *Bostock*, liability for discrimination based on gender stereotyping may lie under Title VII. Again, as Reid points out, there is no dispute as to this issue — claims of discrimination based on gender stereotyping have been and continue to be viable under Title VII. *See* Reid Reply at 2-3. Indeed, *Bostock*'s majority opinion is explicit about the continued viability of such claims: "[J]ust as an employer who fires both Hannah and Bob for failing to fulfill traditional sex stereotypes doubles rather than eliminates Title VII liability, an employer who fires both

Hannah and Bob for being gay or transgender does the same."  *Bostock*, 140 S. Ct. at 1742-43.

The Supreme Court's holding in *Bostock* did not need to address that portion of the Third

Circuit's holding in *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257 (3d Cir. 2001)

finding that sexual-orientation discrimination was beyond the scope of Title VII in order to

abrogate it; nor did *Bostock*'s failure to do so otherwise abrogate the still-valid portion of *Bibby*

recognizing the validity of gender-stereotyping discrimination claims under Title VII.  *See Bibby*,

260 F.3d at 263-64 (recognizing that "[a] plurality of the [Supreme Court] agreed that '[i]n the

specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman

cannot be aggressive, or that she must not be, has acted on the basis of gender.'" (quoting *Price

Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989))).[35]

Having addressed *Bostock*'s effect on the viability of Doe's gender-stereotyping claims

— or, more accurately, the lack thereof — the subsequent issue that must be addressed is, even if

Doe's allegations otherwise make out viable discrimination claims under Title VII and the

Rehabilitation Act, whether Doe has satisfied the threshold requirements to proceed on those

claims.  The Court concludes that he has not.

### 3.    *The failure to exhaust administrative remedies*

"It is a basic tenet of administrative law that a plaintiff must exhaust all required

administrative remedies before bringing a claim for judicial relief."[36]  *Robinson v. Dalton*, 107

---

[35]    Well before *Bostock*, the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490
U.S. 228 (1989) mandated recognition of "a wide variety of 'gender stereotyping' claims."
*Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 551 (E.D. Pa. 2017) (explaining that
"[m]ost notable for purposes of this case, the Supreme Court has held that Title VII's 'because of
sex' language prohibits discrimination based upon employers' subjectively held gender
stereotypes," and collecting cases).

[36]    Title VII's exhaustion requirements are not jurisdictional in nature, and instead "speak to
. . . a party's procedural obligations."  *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850
(2019) (quoting *EPA v. EME Homer City Generation, L. P.*, 572 U.S. 489, 512 (2014)).

F.3d 1018, 1020 (3d Cir. 1997).  The purposes of the exhaustion requirements are "to promote administrative efficiency, 'respect[ ] executive autonomy by allowing an agency the opportunity to correct its own errors,' provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency compile the factual record."  *Id.* (quoting *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367, 370 (3d Cir. 1986)).  "[F]ailure to exhaust administrative remedies is an affirmative defense in the nature of statute of limitations." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).  As relates to Doe's claims, claims brought under Title VII and Section 504 are subject to the same exhaustion procedures, as the Rehabilitation Act incorporates the procedures and remedies established in Title VII, which "includes the incorporation of the prerequisite exhaustion of administrative remedies."  *Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007); *Spence v. Straw*, 54 F.3d 196, 202-03 (3d Cir. 1995) ("[W]e have found that a litigant must exhaust administrative remedies under Title VII before filing suit against a federal agency alleging discrimination on the basis of handicap under sections 504 and 505(a)(2) of the Rehabilitation Act . . . ."); *see* 29 U.S.C. § 794a(a)(1).

There are two particular exhaustion prerequisites that are at issue here.  First, "before bringing a Title VII suit in federal court, a federal employee must initiate contact with an EEO counselor 'within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.'"  *Winder v. Postmaster Gen. of U.S.*, 528 F. App'x 253, 255 (3d Cir. 2013) (quoting 29 C.F.R. § 1614.105(a)(1)).  Second, a federal employee suing under Title VII must, where no "final agency action has [ ] been taken," wait "180 days from the date of filing" of an EEO complaint before filing "a civil action in an

appropriate United States District Court."  29 C.F.R. § 1614.407;[37] *see Miller v. Soc. Sec. Admin.*, 412 F. Supp. 3d 491, 495-96 (D.N.J. 2019) (explaining that a federal "employee must either appeal the agency's final decision to the EEOC or file a civil action in federal district court within 90 days of receiving the final action, or if no final action has been taken, after 180 days from the filing of the initial complaint"); *Wadhwa v. Sec'y Dep't of Veterans Affairs*, 396 F. App'x 881, 885 (3d Cir. 2010) (stating that to sue under Title VII, "an aggrieved federal employee must contact an agency counselor within 45 days of the alleged discriminatory action, *see* 29 C.F.R. § 1614.105(a)(1), file a formal complaint within 15 days of receipt of notice of the right to file a complaint, *see* 29 C.F.R. § 1614.106(b), and receive a final agency decision, unless one is not issued within 180 days, before filing suit in federal court. *See* 29 C.F.R. § 1614.407").

---

[37]    The relevant regulation provides, in full, as follows:

A complainant who has filed an individual complaint, an agent who has filed a class complaint or a claimant who has filed a claim for individual relief pursuant to a class complaint is authorized under title VII, the ADEA, the Rehabilitation Act, and Genetic Information Nondiscrimination Act to file a civil action in an appropriate United States District Court:

(a) Within 90 days of receipt of the agency final action on an individual or class complaint;

(b) After 180 days from the date of filing an individual or class complaint if agency final action has not been taken;

(c) Within 90 days of receipt of the Commission's final decision on an appeal; or

(d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R. § 1614.407.

Through briefing of Defendants' motions, Doe appears to concede that he failed to satisfy the second exhaustion requirement.[38]  The Court agrees.  From the sources of information the Court is able to consider in the context of USPS' motion to dismiss, it is clear that Doe filed his EEO complaint and the instant lawsuit on the same day — December 13, 2020.

Initially, the Court takes judicial notice of the fact that the docket indicates that Doe commenced this lawsuit on December 13, 2019.  *See* ECF No. 1.  As to when the EEO complaint was filed, attached to USPS' motion is a copy of Doe's formal EEO complaint, which indicates that it was signed on December 12, 2019, and filed on December 13, 2019.  *See* USPS Mem., Ex. 5.  In the context of a motion to dismiss, "[a]s regards exhaustion of remedies," EEO documents like this may be properly considered "not for their truth but only for their legal effect."  *Miller*, 412 F. Supp. 3d at 495; *see id*. at 494 ("[C]ourts considering motions to dismiss have relied on EEO files that are integral to the allegations of the complaint." (collecting cases)); *see also In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] *integral to or explicitly relied* upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997) (emphasis in original), or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document,' *PBGC v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).").

As Doe filed both his formal EEO complaint and the complaint commencing this lawsuit on December 13, 2019, he necessarily failed to comply with 29 C.F.R. § 1614.407(b)'s administrative prerequisite that he wait until "[a]fter 180 days from the date of filing an

---

[38]     *See* Doe Opp'n. I at 22 ("Defendant admits that dismissal with prejudice is not appropriate solely on the basis of Doe failing to wait 180 days before filing suit.").

individual [EEO] complaint if agency final action has not been taken" before filing suit.  Failure

to exhaust this administrative remedy deprived USPS of the opportunity to address Doe's claims

internally, and undercuts the purposes of administrative exhaustion generally:  "promot[ing]

administrative efficiency, 'respect[ing] executive autonomy by allowing an agency the

opportunity to correct its own errors,' provid[ing] courts with the benefit of an agency's

expertise, and serv[ing] judicial economy by having the administrative agency compile the

factual record."  *Robinson*, 107 F.3d at 1020 (quoting *Heywood*, 792 F.2d at 370).  Moreover,

there do not exist any grounds to apply waiver or any other equitable doctrine to remedy Doe's

failure to exhaust.  *See Bowen v. City of New York*, 476 U.S. 467, 480 (1986).

The issue then, in light of Doe's failure to exhaust his administrative remedies, is the

proper disposition of his lawsuit at this stage of the proceeding.  After consideration, the Court is

left but one choice:  to dismiss Counts V – X of the Amended Complaint without prejudice, so

that, should Doe choose, the matter may be returned to USPS EEO for further administrative

proceedings.

In reaching this conclusion, it is significant (although not dispositive) that this appears to

be a disposition if not desired, at least somewhat acceptable to both parties.  *See* USPS Mem. at

23; Doe Opp'n. I at 22.  More importantly, dismissal for failure to exhaust administrative

remedies is, under the circumstances presented here, well within the discretion of the Court, if

not required by applicable law.  *See Handle v. Brennan*, No. CV 15-8071, 2018 WL 2002798, at

*5 (D.N.J. Apr. 30, 2018) ("The Third Circuit has affirmed the district court's dismissal of Title

VII claims because the plaintiffs filed the complaint fewer than 180 days from their EEOC

appeal. *Wadha v. Sec'y Dep't of Veterans Affairs*, 396 Fed.Appx. 881, 885 n.5 (3d Cir. 2010)

(citing 29 C.F.R. § 1614.407(d)). . . . Prior decisions of this Court and of the Third Circuit

require dismissal when a plaintiff does not exhaust all administrative remedies. *See* [*Marley v. Donahue*, 133 F. Supp. 3d 706, 716 (D.N.J. 2015)] (finding 'a federal employee's claims under Title VII, the R[ehabilitation] A[ct], and the ADEA must be, and routinely are, dismissed if the employee fails to properly exhaust').").), *aff'd sub nom. Handle v. Postmaster Gen., United States Postal Serv.*, 806 F. App'x 95 (3d Cir. 2020).  Finally, as USPS indicates, dismissing this matter without prejudice so that Doe may further pursue the resolution of his claims administratively is feasible in practice.  *See*, *e.g*., *Yvonne Jett, Complainant*, EEOC DOC 0520110444, 2011 WL 3555250, at *2 (July 20, 2011) ("[T]he Commission has held that access to the administrative process must be maintained for individuals whose civil actions are dismissed without prejudice.").

## V.   CONCLUSION

For the reasons discussed herein, Defendants' motions to dismiss are granted.  Claims I – IV of the Amended Complaint are dismissed, with prejudice.  Claims V – X of the Amended Complaint as against USPS are dismissed, without prejudice, for Doe to exhaust his administrative remedies; to the extent Claims V – X are asserted against either the Postmaster General in his individual capacity, or "Unknown Defendant Number 1" in his or her individual capacity, these claims are dismissed, with prejudice.

A separate Order follows this Opinion.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge