**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE, | Case No. 19-5885 |
| Plaintiff, | |
| v. | |
| LOUIS DEJOY, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE, | |
| Defendant. | |

**O R D E R**

    **AND NOW,** this _____ day of _____, 2020, upon consideration

of the Motion of Defendant to Dismiss Plaintiff's Second Amended Complaint, and Plaintiff's

Response in Opposition thereto, as well as the Briefs submitted in support thereof, it is hereby

**ORDERED** and **DECREED** that the Motion to Dismiss is **DENIED.**

                       BY THE COURT:

                       _____

                                           LEESON, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE,

Plaintiff,

v.

LOUIS DEJOY, POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,

Defendant.

Case No. 19-5885

## RESPONSE OF PLAINTIFF IN OPPOSITION TO THE MOTION OF DEFENDANT TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, John Doe, hereby submits and files the instant Response in Opposition to the Motion of Defendant to Dismiss Plaintiff's Second Amended Complaint, and hereby incorporates by reference all of the arguments in the accompanying Brief as if the same were more fully set forth herein at length.

**WHEREFORE,** Plaintiff respectfully requests that this Court deny the Motion to Dismiss Plaintiff's Second Amended Complaint for the reasons contained herein.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  09/18/2020

*/s/ Justin F. Robinette, Esquire*
JUSTIN F. ROBINETTE, ESQUIRE
Attorney I.D. No. 319829
THE LAW OFFICES OF ERIC A. SHORE, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Phone: (215) 944-6121
Fax: (215) 944-6124
JustinR@EricShore.com

*Attorney for Plaintiff, John Doe*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JOHN DOE,<br><br>                Plaintiff,<br><br>    v.<br><br>LOUIS DEJOY, POSTMASTER GENERAL,<br>UNITED STATES POSTAL SERVICE,<br><br>                Defendant. | Case No. 19-5885 |

**BRIEF IN SUPPORT OF THE RESPONSE OF PLAINTIFF IN OPPOSITION TO THE MOTION OF
DEFENDANT TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

      Plaintiff, John Doe, hereby submits and files the instant Brief in Support of the Response in Opposition to the Motion of Defendant to Dismiss Plaintiff's Second Amended Complaint, and in support thereof, states as follows:

**I.      COUNTER-STATEMENT OF FACTS**

      Plaintiff was employed as a Letter Carrier with the United States Postal Service for twelve (12) years.  See Pltf.'s Second Am. Compl., ECF No. 29, at ¶ 31.  Plaintiff is gay and alleges he was the only openly gay person at the facility where he worked.  See id. at ¶ 32, 35.  Plaintiff is HIV-positive and also alleges discrimination on account of his disability, in addition to his sex and sexual orientation.  See id. at ¶ 100.  Plaintiff specifically alleges that both his sexual orientation and HIV-positive status were known to his coworkers and USPS management.  See id. at ¶ 101.

      Plaintiff alleges he was wrongfully discharged with an effective date of the personnel action being August 19, 2019.  See id. at ¶ 63(h).  Defendant's alleged reason was a physical altercation with a female co-employee, Ms. Lisa Williams, which Plaintiff alleges is false and pretextual and a result of Ms. Williams' animus against Doe.  See id. at ¶¶ 64-69.  Specifically,

Plaintiff received a text message on August 10, 2019, from a current USPS employee, stating that Ms. Williams indicated she was "glad they finally got rid of the fruitcake," meaning Doe. See id. at ¶ 65-66; see Text Messages, at Ex. "A" to Pltf.'s Second Am. Compl.  Plaintiff was charged with a summary offense of harassment but the case was dismissed and Plaintiff was found *not* guilty.  See id. at ¶ 44.

In addition to the above message regarding Ms. Williams being "glad they finally got rid of the fruitcake," meaning Plaintiff, the Plaintiff also received text messages from a colleague informing Plaintiff that USPS management had made other derogatory statements about him including that Plaintiff is a "sick faggot," "homo" "stinky," Glinda, the female witch from *The Wizard of Oz*, that he "sucks big dick," and other offensive and cruel slurs and sexual innuendos. See id. at ¶ 33.  After Doe filed this lawsuit, he was provided a text message by the same colleague from another co-employee, Mr. Mike Hine, stating that if Doe wins his lawsuit, Mr. Hine will "refuse to work near AIDS boy," meaning Doe.  See id. at ¶ 104; see also Ex. "C" to Pltf.'s Second Am. Compl.

Ms. Qiana Reid, Doe's supervisor/manager, also supplies the discriminatory motive by clearing stating about Doe on a prior occasion, "I fucking swear to God I'm gonna get his ass fired," referring to terminating Doe's employment.  See id. at ¶ 33(e).  Ms. Reid made statements like these on multiple occasions.  For example, Ms. Reid made a similar comment just because Doe entered the same room that she happened to be in at the time.  See id. at ¶ 38(a).  And, upon Doe's discharge, Ms. Reid made a celebratory statement about Doe being terminated to the rest of the staff and that Doe "won't be coming back" which was improper.  See id. at ¶ 35.

Plaintiff further points to a number of other comparators – ten (10), in fact, including the two women who were fighting in the parking lot, but it appears were not removed, but were

permitted to arbitrate their cases.  See ¶ 48.  These 10 individuals were treated differently than

Plaintiff but their cases involved physical contact between other employees of USPS.  Plaintiff

alleges that, assuming arguendo that Ms. Williams' biased allegations against Doe are true,

which they are not, then Doe was clearly punished much more harshly than other heterosexual

employees.  See id. at ¶ 48.  Plaintiff further clearly identifies that he does not believe these

individuals to be disabled meaning being HIV-positive either.  See id. at ¶ 113.  Plaintiff further

identifies evidence that there was a delay and possible deviation in the procedure with respect to

his discharge indicative of pretextual discipline.  See id. at ¶¶ 46-47.

After his removal, Doe attempted to utilize his union grievance process.  Doe recounts

the procedural history of the union grievance process as background.  Doe is not alleging his

mere use of the union process tolled any specific date.  Rather, it was agreed by USPS, Doe, and

the union, that August 19, 2019 would be the effective date of the personnel action, because the

date of July 20, 2019 was being extended thirty (30) days to August 19, 2019 to permit Doe the

ability to resign in lieu of being fired after twelve (12) years of loyal service.  It is acknowledged

that July 20, 2019 was communicated to Plaintiff as the effective date initially.

And, Doe does not recollect being notified of the 45-day timeframe to contact an EEO

counselor, let alone during the subject timeframe in which Defendant is using against Doe here,

nor at any point during which Defendant did deign to tell the Plaintiff that the date of July 20,

2019 was being extended thirty (30) days to August 19, 2019 to permit Doe the ability to resign

in lieu of being fired after twelve (12) years of loyal service.  At that time, Doe was never

notified of the 45-day timeframe.

Following the Step A and Step B appeals of the union grievance process, there is a third

step which includes arbitration.  But the union must request arbitration, not the employee.

Arbitration is in the union's discretion completely at the third step.  Doe attempted to request

arbitration at the third step to no avail.  The union here did not request arbitration for Plaintiff,

and instead it was communicated to Plaintiff that, given the circumstances, the agreement would

be that the effective date for the personnel action would be deferred exactly thirty (30) days, or

until August 19, 2019, to permit Doe to voluntarily resign if he wanted to in lieu of being fired

after twelve (12) years of loyal service.  See Pltf.'s First Am. Compl., ECF No. 9, at ¶ 73.  This

was a decision made by USPS and the union and represented to Plaintiff accordingly, and yet

now Defendant is attempting to backtrack and use the previous date to Doe's disadvantage.  Doe

did _not_ resign and instead pursued discrimination claims by contacting an EEO counselor within

45 days of August 19, 2019.  Doe elected to do so promptly after receiving the August 10, 2019

text messages establishing Doe had been discriminated against using a barrage of offensive slurs

and other comments, including being called a "fruitcake" by co-employee, Ms. Williams.  Ms.

Williams was the person who had falsely accused Doe of misconduct, for which he was later

found not guilty, but which were nevertheless the grounds upon which Defendant allegedly

based Doe's discharge.

II.   **COUNTER-STATEMENT OF THE QUESTIONS INVOLVED**

1.   Was the effective date of the personnel action in this case August 19, 2019, being
     deferred thirty (30) days from July 20, 2019, as was represented to Plaintiff
     specifically in this case as being the actual effective date of the personnel action?

     Suggested Answer:  **YES.**

2.   In the alternative, should the Court apply equitable tolling?

     Suggested Answer:  **YES.**

3.   In the alternative, should the Court apply the doctrine of equitable estoppel?

     Suggested Answer:  **YES.**

4.      Should Defendant's argument be rejected in light of the fact Doe does not recollect being notified of the 45-day time limit during the subject timeframe?

Suggested Answer:  **YES.**

5.      Has Defendant waived the 45-day argument by failing to include it in the original EEO Dismissal Notice dated December 13, 2019?

Suggested Answer:  **YES.**

6.      Is Plaintiff entitled to explore these issues, including the issue of the 45-day time limit, in discovery, rather than having these issues decided against Plaintiff on a motion to dismiss?

Suggested Answer:  **YES.**

7.      Should the continuing violation theory/doctrine apply to Doe's claims of hostile work environment?

Suggested Answer:  **YES.**

**III.**    **ARGUMENT**

**A.**    ***August 19, 2019* is the Actual Effective Date of the Personnel Action As It Was Ultimately Represented to Doe Here.**

The effective date of the personnel action was extended until August 19, 2019, therefore Doe was required to make contact with an EEO counselor within 45 days of August 19, 2019, or by October 3, 2019.  Plaintiff did so on September 9, 2019.  Defendant's Motion to Dismiss on this basis should be denied.

With respect to the timing of Doe's contact with an EEO counselor, Defendant argues that the earlier or first date – July 20, 2019 – and not the later or second date for the personnel action – August 19, 2019 – should control.  Defendant is incorrect.  August 19, 2019 is the actual effective date of the personnel action as it was ultimately represented to Doe here and which should control.

5

The relevant regulation states, "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of ***the*** effective date of the action." 29 C.F.R. § 1614.105(a)(1) (emphasis added).

The date for the personnel action to become effective was extended to August 19, 2019, this is what was ultimately communicated to Doe, and this is what he was ultimately led to believe. The language actually used when referring to the date being extended thirty (30) days from July 20, 2019, to August 19, 2019, as communicated to Doe, was, "*effective date of the personnel action.*" What was being referring to here, and specifically at the time, was the effective date of the personnel action for Doe, which was extended thirty (30) days from July 20, 2019 to August 19, 2019, to permit Doe to resign in lieu of being terminated after twelve (12) years of loyal service. Defendant actively misled Doe regarding the effective date of the personnel action and should not be permitted to now backtrack now to escape liability by taking advantage of their misrepresentation to Doe. To the extent there was ambiguity, then the ambiguity was not created by Doe.

It should be noted that, in prior filings related to the Motions to Dismiss filed by the Defendant, specifically the Proposed Order to the Defendant's two (2) prior Motions to Dismiss, Defendant has previously used language such as the "original effective date," referring to the earlier of the two dates, July 20, 2019, rather than the later of the two dates, August 19, 2019. See Def's Proposed Order, 19-2, p. 1; Proposed Order, ECF No. 8-1, p. 1. It should be noted that Defendant has removed this language from the instant Proposed Order in support of Defendant's Motion to Dismiss as it tends to reveal the problem with Defendant's argument. See Proposed Order, ECF No. 31-2.

Plaintiff also notes that Defendant has apparently removed reference to its use of language like, "that effective date," referring to July 20, 2019, rather than August 19, 2019.  See Def.'s Br. in Support of Mot. to Dismiss, ECF No. 8-2, p. 10; See Def.'s Br. in Support of Mot. to Dismiss, ECF No. 19-1, p. 11.

Although Defendant has now omitted use of "original effective date" or "that effective date," Defendant still continues to use from its prior motion papers, and now noticeably emphasizes, in its present Motion to Dismiss, the phrase, "*specific effective date*," when referring to July 20, 2019, rather than August 19, 2019.  See, e.g., Def.'s Br. in Support of Def.'s Mot. to Dismiss, ECF No. 31-1, p. 11.  The use of this language belies the point.  The date identified by Plaintiff – August 19, 2019 – is a specific effective date.  Plaintiff, in point of fact, contends that August 19, 2019 is actually *the* specific effective date of the personnel action because, Doe contends, it was extended thirty (30) days from July 20, 2019 to August 19, 2019 to permit Doe to resign in lieu of being terminated after twelve (12) years of loyal service.

Plaintiff's position, and not Defendant's position, is more consistent with the plain language of the text of the regulation, 29 C.F.R. § 1614.105(a)(1), which says, "within 45 days of ***the*** effective date of the action" (emphasis added).  This points to the effective date of the personnel action being the actual effective date of the personnel action, and which is ultimately represented to the employee as such, which here is August 19, 2019 as Doe contends.  The plain language of this regulation, 29 C.F.R. § 1614.105(a)(1), does not say, "original effective date," "first effective date," "this effective date," "that effective date," or any such similar language which Defendant is tactically using here.  The regulation says, "***the*** effective date of the action." The actual effective date of the personnel action is August 19, 2019.  It was actually represented to Doe that the actual effective date of the personnel action was extended thirty (30) days from

7

July 20, 2019 to August 19, 2019 to permit Doe to resign in lieu of being terminated after twelve (12) years of loyal service.  Another way of saying this is that it was agreed between Doe, the USPS, and the union that the actual effective date of the personnel action was extended thirty (30) days from July 20, 2019 to August 19, 2019 to permit Doe to resign in lieu of being terminated after twelve (12) years of loyal service.

Defendant acknowledges that the "Step B decision pushed the date of removal back . . . ." See Def.'s Br. in Support of Mot. to Dismiss, ECF No. 31-1, p. 11.  This statement should be clarified.  First, the date of removal was not pushed back, but rather, *the effective date of the personnel action* was pushed back.  The July 20, 2019 date that Defendant is attempting to use against Doe is what is being referred to here in this statement.  Second, in response to the assertion that the Step B decision pushed the effective date of the personnel action back, Doe contends it was agreed by USPS, Doe, and the union that the effective date of the personnel action would be extended thirty (30) days from July 20, 2019 to August 19, 2019 to permit Doe to resign in lieu of being terminated after twelve (12) years of loyal service.  This is what was ultimately represented to Doe, upon which he reasonably relied, and now Defendant is attempting to backtrack and take advantage of the deadline when it had been extended.

Defendant acknowledges the decision in Hamiel v. Donahoe, 2015 WL 2255258 (E.D. Pa. May 14, 2015).  See Def.'s Br., ECF No. 31-1.  But it is the *Defendant* who first brought this Court's attention to Hamiel v. Donahoe.  See ECF No. 8-2, 18-19; ECF No. 19-1, pp. 20-21. The underlying reasoning or rationale behind the Hamiel case actually tends to support the Plaintiff's position in this matter, and not the Defendant's position.

In Hamiel, the plaintiff-employee was instructed that there were multiple "potential termination dates" by the defendant-employer similar to the instant case.  Hamiel, 2015 WL 2255258 at at *4.  The Notice of Removal in Hamiel, in fact, specifically, stated as follows:

> This is a written notice that you will be removed from the Postal Service no sooner than 30 calendar days from your receipt of this notice.  If a grievance is initiated, the effective date of your removal will be deferred until after a decision has been rendered at Step B of the grievance procedure or (14) fourteen days after the appeal is received at Step B, whichever comes first.

Hamiel, 2015 WL 2255258, at *2, n.2.

The reasoning of Hamiel when applied to the instant case suggests that, for Doe in the instant case, if the effective date of removal in the Step B decision was deferred approximately thirty (30) days to permit Doe the ability to voluntarily resign, then the effective date, therefore, logically is deferred for that thirty-day period as stated.  The plaintiff in Hamiel was not otherwise held to the original date of thirty (30) days from receipt of the notice.  In Hamiel, the option to defer until a Step B decision was reached by an arbitrator, or fourteen (14) days after the appeal is received at Step B, whichever is earlier, explained how the effective date would be calculated.  In the instant case, similarly, it was explained to Doe how the effective date would be calculated.  He was not permitted to go from Step B to arbitration, and the effective date was deferred exactly thirty (30) days to permit Doe the ability to voluntarily resign.  Of course, Doe did not resign and instead pursued discrimination claims by contacting an EEO counselor within the required timeframe, promptly after receiving the August 10, 2019 text messages.

Defendants do not sufficiently distinguish Hamiel from the circumstances of this case, and Defendant's argument misses the point because Doe is not contending that his mere participation in union grievance proceedings tolled the timing of an EEO requirement.  Doe's claim is that, under the specific facts pled here, it was represented to Doe – it was agreed upon

by Doe, his union, and the USPS, that the effective date of the personnel action for Doe would be extended thirty (30) days from July 20, 2019 to August 19, 2019, to permit Doe to resign in lieu of being terminated after twelve (12) years of loyal service.  And, Doe was not otherwise notified of the 45-day timeframe.

It should also be acknowledged that the Notice of Dismissal for Doe's EEOC complaint lists the effective date of the action as August 19, 2019.  Doe points this out in the Second Amended Complaint where he attaches the Notice of Dismissal for the Court's review.  <u>See</u> Ex. "A" to Pltf.'s Second Am. Compl., ECF Nos. 29, 30, EEOC Notice of Dismissal, at p. 2 ("**. . . ando [*sic.*] on or around June 12, 2019, you were issued a NOR [Notice of Removal], effective August 19, 2019.**") (emphasis added).  Doe contends in the Complaint that the USPS documentation regarding the dismissal of Doe's EEOC claim says the effective date of the action is August 19, 2019 on that document because the effective date of the action actually is August 19, 2019.  <u>See</u> Pltf.'s Second Am. Compl., ECF No. 29, para. 3-19, Plaintiff's "Preliminary Statement," submitted respectfully to the Court.  Defendant attempts no rebuttal of, and tactically omits any reference to, what the Defendant's own Dismissal Notice for Doe's EEO Complaint actually states, which is that the effective date of the personnel action is actually August 19, 2019, despite the fact that Plaintiff clearly alleged these facts in his Second Amended Complaint, and attached the Notice as Exjibit "A."  <u>See id.</u>; <u>see also</u> Ex. "A" to Pltf.'s Second Am. Compl, ECF No. 30.

Plaintiff contends that it is plausible that whoever drafted the Notice of Dismissal was an employee of USPS and they either correctly identified the effective date of the action as August 19, 2019, because the effective date of the action <u>*is*</u> August 19, 2019, or the person who drafted it assumed that August 19, 2019 was the effective date of the action.  <u>See id.</u>  Once again, it is

reasonable for a person, in the exercise of reasonable diligence, to believe that the effective date of the personnel action was extended to August 19, 2019, when they are, in fact, told that the effective date of the personnel action was extended to August 19, 2019.  Again, the Defendant attempts no response to the statement contained in the USPS' own Notice of Dismissal of Doe's EEOC Complaint stating that the effective date of the action is August 19, 2019, in Defendant's Motion to Dismiss, although Plaintiff has clearly set forth this argument in the Complaint, and attached the Notice at issue as Exhibit "A" to Plaintiff's Complaint.  See id.  Defendant is strategically ignoring the fact that the USPS Notice of Dismissal of Doe's EEOC Complaint does acknowledge August 19, 2019 as the effective date of the personnel action.  It is reasonable for a person to think August 19, 2019 is the effective date of the personnel action.  August 19, 2019 was the effective date of the action as ultimately communicated to Doe.

Defendant also argues that the July 20, 2019 date is "unambiguous" which is insincere. See Def.'s Br., ECF No. 31-1, p. 15.  While Defendant asserts that this scenario is "unambiguous," respectfully, the exact opposite could be said to be true.  Plaintiff contends it was unambiguous when USPS and the union told Doe that the effective date was going to be August 19, 2019 and _not_ going to be July 20, 2019.  This scenario is the definition of something which is ambiguous.  To the extent there is ambiguity, that ambiguity was not created by Doe.

Defendant states that it was communicated to Doe that "[t]he effective date of the removal shall be **August 29, 2019 [_sic._]** to afford the grievant an opportunity to voluntarily resign . . . ." See Def.'s Br., ECF No. 31-1, p. 11 (emphasis added).  However, this is also _not_ correct.  The effective date of the action communicated to Doe was August 19, 2019.

It should be noted that interpretation of a statute or regulation's text such as 29 C.F.R. § 1614.105(a)(1) must be interpreted consistent with the clear and plain language of the text.

Finally, Plaintiff argues that logic dictates that an effective date is a date on which something becomes effective.  If the effective date is extended, the date at which something is to become effective is extended.  It was therefore not previously fixed.  The later date becomes the date on which the personnel action becomes effective and upon which it then becomes fixed. Plaintiff should be found to have contacted the EEO counselor within the proper timeframe *as measured from the true and correct effective date of the personnel action which is August 19, 2019*, or this Court should find that equitable tolling applies.

**B.      Equitable Tolling.**

Plaintiff asserts an argument of equitable tolling in the alternative.  Plaintiff also asserts equitable-tolling allegations in Plaintiff's Second Amended Complaint at paragraphs 20-24.

29 CFR § 1614.105(a)(2) sets forth specific examples of areas where equitable tolling is permitted, and there is a catch-all fourth provision as well so the reasons for equitable tolling are not limited to those contained in the text of the regulation.  The Court should look to the reasons listed in 29 CFR § 1614.105(a)(2) and find equitable tolling here.

Plaintiff points out preliminarily that equitable tolling is distinct from equitable estoppel. Plaintiff does not need to necessarily show a misrepresentation, although Plaintiff *does* contend the Defendant misrepresented here.  Rather, for purposes of equitable tolling, as opposed to equitable estoppel, Plaintiff can show a set of circumstances which are that Plaintiff acted with the exercise of reasonable diligence, and the circumstances were reasonably beyond his control here, and which would warrant equitable tolling in order to avoid an unnecessarily harsh result. Equitable estoppel can be included as a form of, or under the umbrella of, equitable tolling, but the concept of equitable tolling must include more conduct than merely equitable estoppel or active deception.

This court should find equitable tolling also because "despite due diligence Doe was prevented by circumstances beyond his control from contacting the counselor within the time limits, or for other reasons considered sufficient . . . ."  29 CFR § 1614.105(a)(2).

Doe was told that the effective date of the personnel action was extended or deferred until *August 19, 2019*.  Doe does *not* allege and Defendant does not acknowledge anywhere that Doe was instructed of the 45-day deadline.  Doe was not informed of this information at the time the effective date of the personnel action was extended either.  Defendant should be prevented from enforcing a limitations period where, as here, its own actions prevented a reasonably diligent plaintiff from bringing a timely claim.  Doe also did not know about the discriminatory matter concerning his removal until August 10, 2019 when he received the text messages, and at that point Doe thought the effective date of the action had been deferred until August 19, 2019 as indicated to him.

Defendant is incorrect that the language of 29 CFR § 1614.105(a)(2) is limited, and Defendant is incorrect that Doe cannot demonstrate that his circumstances fall within the regulation.  The language of the regulation also recognizes this with four (4) provisions including a catch-all equitable-tolling provision.  Equitable tolling here would in no way be inconsistent with the four prongs and there is a catch-all prong at any rate.  See David v. Hall, 318 F.3d 343, 345-46 (1st Cir. 2003) ("'Equitable tolling' is an umbrella term for the notion that a statute of limitations– unless its time limit is 'jurisdictional'–may be extended for equitable reasons not acknowledged in the statute creating the limitations period.").  Equitable tolling is proper when the "principles of equity would make [the] rigid application [of a limitation period] unfair." Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998) (internal citation omitted). The circumstances are appropriate here for equitable tolling where there was a misrepresentation

upon which Doe relied regarding the effective date of the action, where Doe did not know about the discriminatory bias until he received the text messages at issue, and in order to avoid an unnecessarily harsh and unjust result as Defendant's argument comes down to a matter of about six (6) days.

Primarily in light of the representation regarding the effective date of the personnel action being extended thirty (30) days from July 20, 2019 to August 19, 2019 to permit Doe to resign in lieu of being terminated after twelve (12) years of loyal service, and Plaintiff's receipt of the relevant text messages on August 10, 2019, Plaintiff satisfies the standard for equitable tolling, having "exercised reasonable diligence in investigating and bringing his claims," and therefore Plaintiff should be given the benefit of equitable tolling here.  See Miller, 145 F.3d at 618-19 (internal quotation marks omitted).

Secondarily, it should be acknowledged that Doe did not know that his wrongful termination was on account of his sexual orientation, or know about the specific discriminatory LGBT bias which existed against him at the postal branch he worked at, until he received the direct evidence of the discrimination in the form of the text messages from former USPS Letter Carrier, Mr. John Bond.  Doe attaches the text messages to the Complaint.  See Ex. "B" to Pltf.'s Second Am. Compl., ECF No. 30.  The text messages are dated August 10, 2019, which is the date Doe received them and discovered evidence of the discriminatory bias which existed against him at the facility.

Doe did not receive or know about the text messages, for example, stating that Ms. Williams, upon whom Defendant relied to effect Doe's discharge, had expressed pleasure that the "fruitcake" had been fired, until August 10, 2019.  Doe was accused of misconduct by Ms. Williams and Defendant claimed Doe was terminated on that basis.  Doe only later learned, on

August 10, 2019, in the text messaging, that Ms. Williams referred to Doe as a "fruitcake" (she was "glad they finally got rid of the fruitcake").  Doe therefore contends that her accusation was purely the result of discriminatory bias against him, which was the real reason for the accusation.

Doe also did not receive or know about the text messages calling him, among other things, "sick faggot," "homo" "stinky," Glinda, the female witch from *The Wizard of Oz*, "AIDS boy," that he "sucks big dick," and other offensive and cruel slurs and sexual innuendos.  See, e.g., Pltf.'s Second Am. Compl., ECF No. 29, para. 33-37; see Text Messages, at Exhibit "B" and "C" to Plaintiff's Second Amended Complaint.  Doe alleges he faced a "sadistic, discriminatory, and hostile work environment" on account of his sexual orientation throughout his Complaint.   See, e.g., Pltf.'s Second Am. Compl., ECF No. 29, para. 64, 67, 68, 77.  Doe also learned in the text messaging that there was a celebratory message given at Doe's departure which is a deviation from standard practice.  See, e.g., Pltf.'s Second Am. Compl., ECF No. 29, para. 33-37.  This left the conclusion for Doe on August 10, 2019 that Doe felt his removal was discriminatory.  Plaintiff reasonably believed his wrongful termination was on account of sexual-orientation discrimination after receiving the text messages on August 10, 2019.  Thereafter Doe diligently contacted an EEO counselor.[1]

Doe recounts this information not to be inflammatory to the Court.  Rather, Doe includes the extent of this language and respectfully requests that the Court acknowledge the magnitude of the bias and discrimination which was unknown to Doe during the subject time-frame, but subsequently revealed to Doe by the text messaging, and upon which he took action shortly

---

[1] It should also be noted that, during the timeframe alleged, Plaintiff had also not, at that point, been found *not* guilty of the alleged crime of harassment of Ms. Williams.  It was only later that this allegation was determined to be unfounded.  Plaintiff realized his termination was wrongful after receipt of the text messages.  He reasonably believed his wrongful termination was on account of discrimination after receiving the text messages on August 10, 2019, and he diligently contacted an EEO counselor thereafter.

thereafter by contacting an EEO counselor.  Shortly after receiving this information on August

10, 2019, and having been led to specifically to believe that the effective date of his personnel

action was August 19, 2019, Doe shortly thereafter contacted an EEO counselor on September 9,

2019, alleging discrimination, harassment, and wrongful termination on account of his sexual

orientation.

　　　In addition to the above arguments, it should be acknowledged in support of both Doe's

equitable tolling argument, as follows:

- Doe also does not recollect being advised of the 45-day timeframe to contact an
  EEO counselor if he believed he had been discriminated against on the basis of
  sex in June or July 2019, at any point in time during which Defendant contends
  Doe's timeframe expired, nor at the time he was told the effective date of the
  personnel action was being extended, to permit him to resign in lieu of being
  fired.

- Doe has no prior experience with these administrative procedures.

- Doe was not represented or assisted by counsel during the timeframe in which
  Defendant contends Doe's period to contact an EEO counselor elapsed.

　　　Finally, although this tends to be more of an argument of equitable estoppel, Plaintiff

does allege that Defendant actively misled him regarding the effective date of the personnel

action, therefore for this additional reason equitable tolling is appropriate.  It is recognized that

"where the plaintiff has been actively misled regarding the reason for his or her discharge, the

equitable tolling doctrine provides the plaintiff with the full statutory limitations period, starting

from the date the facts supporting the plaintiff's cause of action either become apparent to the

plaintiff or should have become apparent to a person in the plaintiff's position with a reasonably

prudent regard for his or her rights."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d

1380, 1389 (3d Cir.  1994), abrogated on other grounds by Rotkiske v. Klemm, 890 F.3d 422,

428 (3d Cir. 2018) (en banc), aff'd —— U.S. ——, 140 S. Ct. 355 (2019).  The Oshiver test is still

good law.  Plaintiff meets the requirements of Oshiver as Defendant did actively mislead Doe as

to the effective date of the personnel action.  There was a misrepresentation and Plaintiff relied

on it in a way that caused him noncompliance with the limitations period at issue.

   For the above reasons, equitable tolling would be appropriate under the circumstances

presented here.

   **C.    Equitable Estoppel or Misrepresentation**

   To the extent necessary, Plaintiff asserts independently that Defendant should be

equitably estopped from asserting the earlier date.  Defendant actively represented to Doe that

the effective date of the personnel action would be August 19, 2019, and that the date of July 20,

2019 was being extended thirty (30) days to August 19, 2019, to permit Doe the ability to resign

in lieu of being fired, after twelve (12) years of loyal service.  Defendant actively misled Doe

regarding the effective date of the personnel action, and Defendant should be estopped by their

conduct.

   **D.    Doe Does Not Recollect Being Notified of the 45-Day Time Limit to Seek
           EEO Counseling During the Subject Timeframe.**

   There appears to be no evidence Doe was notified of the 45-day time limit to seek EEO

counseling during the subject timeframe.  Doe was not otherwise aware of this time limit during

the subject timeframe.  Neither does Doe recollect being notified of the 45-day time period at the

time he was notified that the effective date of the personnel action was being extended.

Defendant appears to acknowledge this fact by stating that the EEO counselor mentioned

timeliness, which Plaintiff disputes this characterization, but at any rate, this would be after the initial EEO contact anyway.

As recently recognized by the Eastern District of Pennsylvania, for example, in <u>Moore v. Paulson</u>, No. 06-4808, 2008 WL 4274383, *8 (E.D. Pa. Sept. 15, 2008), and other unpublished opinions of panels of the Third Circuit Court of Appeals, multiple courts have held that federal agencies must provide employees notice of the 45-day time limit to seek EEO counseling in order to assert the 45-day argument.  <u>See</u> <u>Hatcher v. Potter</u>, 196 Fed. Appx. 120 (3d Cir. 2006) (discussing the district court's review of whether the employee had been provided with notice of the forty-five day time limit as required by 29 C.F.R. § 1614.102(b)(5)); <u>Shenkan v. Potter</u>, 71 Fed. Appx. 893, 896 (3d Cir. 2003) ("Shenkan has never come forth with any evidence that he was 'not otherwise aware' of the relevant limitations periods, as required by 29 C.F.R. § 1614.105(a)(2).").

Defendant appears to acknowledge in the Motion to Dismiss that Doe was not notified of this 45-day timeframe during the subject timeframe.  Defendant attaches a series of exhibits to the Motion to Dismiss, but Defendant does not refer this Court anywhere to a notice of the 45-day period during the subject timeframe.  Defendant even requests this Court convert this motion to one for summary judgment and decide it on the facts apparently without attaching such information.  Defendant acknowledges only that, "during the ADR portion of the EEO process, before Doe filed his formal administrative complaint, the EEO counselor warned Doe that his EEO complaint was subject to dismissal for untimeliness," which characterization is completely disputed by Doe, at this point, at any rate.  <u>See id.</u> at p. 5, para. 2.  But, this appears to concede the point that Doe was notified <u>*after*</u> the initial contact with the EEO counselor.  Plaintiff alleges in the Second Amended Complaint that he disputes at this point that in July he had adequate

notice.  See Pltf.'s Second Am. Compl., ECF No. 29, para. 19.  Doe was not represented by

counsel during the subject timeframe Defendant is attempting to use against Doe here.

Defendant should not escape liability here on a technicality.  This Court should deny

Defendant's Motion to Dismiss.

> **E.**   **Defendant Waived the 45-Day Argument By Failing to Include It Initially
> Including in the Original Notice of Dismissal of the EEO Complaint on
> <u>December 13, 2019</u>**

In <u>Tinnin v. Danzig</u>, No. 99-1153, 2000 WL 190255 *3 (E.D.  Pa. Feb 4, 2000), the

Eastern District of Pennsylvania found waiver of the 45-day issue where the government failed

to sufficiently raise the 45-day argument initially during the EEO administrative process.  The

same logic should apply here.

The USPS issued the first Notice of Dismissal, perfunctorily, on the very day after Doe's

complaint was mailed on December 12, 2019.  USPS stated that USPS received the document

the very next day, December 13, 2019, and issued the Notice of Dismissal that very same day,

December 13, 2019.  The reason and the only reason listed for dismissal at that time, in the

Notice of Dismissal, was that Doe had filed a Federal lawsuit, concomitantly, on the very same

day, December 13, 2019.  See Ex. "B" to Pltf.'s First Am. Compl., ECF No. 9.  Nobody at USPS

at this time technically raised the specific issue of the 45-day period for the effective date of the

personnel action in this Notice of Dismissal.  See id.  One issue alone was raised and it was

Doe's filing in Federal court.  The 45-day issue with respect to the effective date of the personnel

action was not raised until Attorney Melley raised this issue for the first time in Federal district

court.  This is not proper and the issue has been waived.

Ms. Terpstra, the EEO counselor, did not raise the timeliness of the 45-day period as to

the effective date of the personnel action with Doe on the call.  Doe specifically told Ms.

Terpstra the effective date of the personnel action was August 19, 2019.  The first EEO

Dismissal Notice makes no mention of the 45-day requirement anywhere.  And, in point of fact,

the second or most recent EEO Dismissal Notice – attached to Plaintiff's Second Amended

Complaint as Exhibit "B," ECF No. 30 – indicates the effective date of the personnel action and

records it as August 19, 2019.  See ECF No. 30, Ex. "B," p. 2.  The government has waived this

issue.

> **F.**      **Discovery**

Even with respect to the 45-day issue, given the circumstances of this case, discovery into

certain matters is clearly needed here before ruling on a dispositive motion in the instant case.

Defendant's Motion to Dismiss should be denied and discovery must be permitted including, at

minimum, into the 45-day issue.

> **G.**      **Continuing Violation**

Plaintiff alleges a continuing violation for the harassment/hostile work environment claim

in being wrongfully accused of "putting your foot in her a--hole," referring to the wrongful

accusation from Ms. Williams, which is completely false and pretextual.  See Pltf.'s Second Am.

Compl., ECF No. 29, para. 40.  Doe contends this is part of the "sadistic, discriminatory, and

hostile work environment" or harassment of Doe as a gay man.  See id.  Doe contends this type

of false accusation made against a gay man is not only discriminatory on the basis of LGBT

status, but that it should be considered a form of sexual harassment against a gay man.  See id.

Doe also alleges a "sadistic, discriminatory, and abusive work atmosphere."  See id. at para. 54.

Doe alleges this misconduct in tandem with the text-message evidence which clearly

constitutes cruel and hateful anti-LGBT harassment against Doe, and which also constitutes

sexual harassment of Doe.  Incidents of harassment or discrimination occurring post-employment

may still be considered actionable with respect to the totality of the circumstances relating to a claim of a hostile work environment.  The continuing violation theory clearly applies to claims of a hostile work environment.  A continuing violation should be found linking both series of events above at this stage of the case.  Plaintiff's hostile work environment claims should therefore move forward.

> ### H. <u>Remaining Arguments</u>

Defendant includes a series of arguments in the Conclusion section from prior motion papers which are not sufficiently addressed in the Defendant's Motion or Brief.  <u>See</u> ECF 31-1, p. 17.  Defendant has incorporated arguments by reference which is not appropriate.  These arguments also technically relate to a prior pleading, not the operative pleading, the Second Amended Complaint.  Defendant has not briefed or argued any of these points in the present Motion with specificity.  To the extent necessary, Plaintiff incorporates by reference any previous arguments from prior motions and briefs in response to Defendant's additional arguments.  Doe has sufficiently pled a hostile work environment and that he was terminated on account of his disability.  Defendant's Motion to Dismiss must be denied.

## IV. <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Motion of Defendant, Louis DeJoy, Postmaster General, United States Postal Service, to Dismiss Plaintiff's Second Amended Complaint be denied.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED:  09/18/2020          */s/ Justin F. Robinette, Esquire*
                            JUSTIN F. ROBINETTE, ESQUIRE
                            Attorney I.D. No. 319829

THE LAW OFFICES OF ERIC A. SHORE, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Phone: (215) 944-6121
Fax: (215) 944-6124
JustinR@EricShore.com

*Attorney for Plaintiff, John Doe*

## <u>CERTIFICATE OF SERVICE</u>

I, JUSTIN F. ROBINETTE, ESQUIRE, Attorney for Plaintiff do hereby certify that on this <u>18th</u> day of <u>SEPTEMBER</u>, <u>2020,</u> or as soon thereafter as may occur, I caused a true and correct copy of the foregoing Response in Opposition to the Motion of Defendant to Dismiss Plaintiff's Second Amended Complaint, and the Brief in Support thereof, to be filed with the Court electronically, causing the documents to be served electronically on all counsel of record.

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED: <u>09/18/2020</u>       */s/ Justin F. Robinette, Esquire* _____
JUSTIN F. ROBINETTE, ESQUIRE
Attorney I.D. No. 319829
THE LAW OFFICES OF ERIC A. SHORE, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Phone: (215) 944-6121
Fax: (215) 944-6124
JustinR@EricShore.com

*Attorney for Plaintiff, John Doe*