**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

JOHN DOE,                          :
          Plaintiff,              :
                          :
         v.                          :          No. 5:19-cv-05885
                          :
LOUIS DEJOY, POSTMASTER            :
GENERAL, and the U.S. POSTAL       :
SERVICE,                           :
              Defendants.         :

_____

## O P I N I O N

**Postmaster General/USPS's Motion to Dismiss the Second Amended Complaint,
ECF No. 31—DENIED**


**Joseph F. Leeson, Jr.**                                      **November 4, 2020**
**United States District Judge**


## I.      INTRODUCTION

      This is an employment discrimination action in which Plaintiff John Doe ("Doe"),[1] who

was a letter carrier with the United States Postal Service ("USPS"), claims he was harassed by

coworkers and eventually terminated on account of his sexual orientation and HIV-positive

status.  This Court issued an Opinion and Order dated July 31, 2020, on Defendants' motions to

dismiss Doe's Amended Complaint.  The Court dismissed Doe's claims brought directly under

the U.S. Constitution, as well as his claims against any individual Defendants, with prejudice; the

Court dismissed Doe's claims under Title VII of the Civil Rights Act of 1964 ("Title VII) and

---

[1]      The Plaintiff has been granted leave to proceed under a pseudonym on a conditional
basis.  *See* ECF Nos. 17-18.

Section 504 of the Rehabilitation Act of 1973 ("Section 504") against USPS without prejudice and with leave to re-plead after he exhausted his administrative remedies.

Doe's administrative proceeding with USPS was subsequently reinstituted and dismissed as untimely, as USPS found Doe had failed to initiate contact with a USPS Equal Employment Opportunity ("EEO") counselor within 45 days of the effective date of the allegedly discriminatory action as required by the relevant regulation. Doe has filed a Second Amended Complaint ("SAC"), ECF No. 29, asserting six claims of employment discrimination against USPS, which USPS has moved to dismiss for failure to timely initiate contact with an EEO counselor. For the reasons set forth below, USPS's motion to dismiss the SAC is denied.

## II.    BACKGROUND

The factual allegations in Doe's SAC are substantively identical to the allegations in his Amended Complaint, which the Court recounted in detail in its decision on Defendants' initial motion to dismiss. *See generally* ECF No. 27; *Doe v. DeJoy*, No. 5:19-CV-05885, 2020 WL 4382010 (E.D. Pa. July 31, 2020). The Court will therefore limit its recital here to the relevant procedural history as it pertains to the timeliness of exhaustion of Doe's claims—the sole basis of USPS's motion to dismiss. The following chronology is taken both from allegations in the SAC, as well as documents attached to the pleadings and the motion papers.[2]

During the spring of 2019, Doe had been a letter carrier with USPS for approximately twelve years. *See* SAC ¶ 2. On April 22, 2019, USPS issued Doe "written notification of [his] placement in an emergency, off-duty non-pay status effective April 20, 2019," for an alleged incident between Doe and a coworker that occurred on April 20, 2019. Notice of Emergency

---

[2]    While the legal effect of certain events in this chronology is at the heart of the instant dispute, the chronology itself is not in dispute.

Placement, attached as Exhibit 1 to USPS's Memorandum in Support of its Motion to Dismiss ("USPS's Mem."), ECF No. 31-1. On June 12, 2019, and allegedly as a consequence of the same conduct for which he was placed on emergency leave, USPS issued Doe a Notice of Removal. *See* Notice of Removal, attached as Exhibit 2 to USPS's Mem. The top of the Notice of Removal, directly below the subject line, stated as follows: "You are hereby notified that you will be removed from the Postal Service effective July 20, 2019." *Id*. at 1. According to USPS, a tracking report indicates that Doe received the Notice of Removal on June 14, 2019. *See* Tracking Report, attached as Exhibit 3 to USPS's Mem.

After receipt of his Notice of Removal, Doe initiated union grievance proceedings. *See* Doe's Memorandum in Opposition to USPS's Motion to Dismiss ("Doe's Opp'n."), ECF No. 32, at 3. On August 2, 2019, the grievance process concluded with the issuance of a "Step B Decision." Step B Decision, attached as Exhibit 4 to USPS's Mem. The "Decision" section of Doe's Step B Decision stated as follows: "The Dispute Resolution Team (DRT) has RESOLVED this grievance by determining management had just cause to issue the Notice of Removal on June 12, 2019. The effective date of the removal shall be August 19, 2019 to afford the grievant an opportunity to voluntarily resign from the Postal Service." *Id.* at 1.

On September 9, 2019, Doe initiated contact with an EEO counselor for pre-complaint processing. *See* EEO Alternative Dispute Resolution ("ADR") Inquiry Report, attached as Exhibit 7 to USPS's Mem., at 1. The pre-complaint process played out between September 9, 2019 and December 5, 2019, after which time Doe received a notice of right to file an EEO complaint. *See id*. at 1-3; *see also* Case Details Printout, attached as Exhibit 6 to USPS's Mem. On December 13, 2019, Doe filed both a formal EEO discrimination complaint, *see* EEO

Complaint,[3] attached as Exhibit 5 to USPS's Mem., as well as the Complaint commencing the instant lawsuit, *see* ECF No. 1.  In a decision dated January 6, 2020, USPS dismissed Doe's EEO complaint on the basis that he had filed the instant lawsuit on the same day that he filed the EEO complaint.  *See* Dismissal of Formal EEO Complaint, attached as Exhibit B to Doe's Amended Complaint, ECF No. 9.[4]

 On February 14, 2020, USPS filed a motion to dismiss the initial Complaint in this action, *see* ECF No. 8, in response to which Doe filed an Amended Complaint on February 28, 2020, *see* ECF No. 9.  All Defendants[5] moved to dismiss the Amended Complaint on May 4, 2020.  *See* ECF No. 19.  In an Opinion and Order dated July 31, 2020, this Court granted Defendants' motions to dismiss.  *See* ECF Nos. 27-28.  The Court dismissed with prejudice Doe's claims that were asserted directly under the Constitution, as well as all claims against individual Defendants.  *See id.*  As to Doe's Title VII and Section 504 claims against USPS, the Court found Doe had failed to abide by 29 C.F.R. § 1614.407, which requires that a federal employee suing under Title VII must, where no "final agency action has [ ] been taken," wait "180 days from the date of filing" of an EEO complaint before filing "a civil action in an appropriate United States District Court."  *See* ECF No. 27 at 27-28.  The Court dismissed these claims without prejudice and with leave to reassert them after Doe returned to USPS to allow USPS EEO an opportunity to resolve them.  *See id.* at 30-31.

---

[3]     The formal EEO complaint indicates it was signed on December 12, 2019, and filed the next day on December 13, 2019.

[4]     According to the decision of dismissal, "[t]he Commission has long held that an employee cannot use the EEO complaint process to lodge a collateral attack on another forum's proceedings."

[5]     The Amended Complaint named USPS, the Postmaster General, and several individuals as Defendants.  *See* ECF No. 9.

USPS thereafter reinstituted Doe's administrative proceeding, and subsequently dismissed Doe's administrative complaint, stating that "[s]ince [Doe's] request for pre-complaint counseling was made more than 45 days after the issue alleged to be discriminatory, [his] complaint is now dismissed as untimely in accordance with 29 C.F.R. § 1614.107(a)(2)." Decision of Dismissal, attached as Exhibit B to the SAC, at 3. Doe then filed his SAC in this action, which USPS now moves to dismiss. *See* ECF Nos. 30-33.

## III. THE CONTENTIONS OF THE PARTIES

### A. USPS's arguments for dismissal

USPS's arguments for dismissal are relatively straightforward. "To exhaust administrative remedies, '[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.'" USPS's Mem. at 7 (quoting 29 C.F.R. § 1614.105(a)(1)). As to the timeliness of Doe's wrongful termination claims (Counts I, III, and V of the SAC), USPS states as follows: "Doe received the June 12, 2019 Notice of Removal on June 14, 2019. The Notice of Removal unambiguously states an effective date of July 20, 2019. Accordingly, Doe was required to initiate EEO contact by July 29, 2019 (45 days after Doe received the Notice of Removal) or, at the very latest, September 3, 2019 (45 days after the effective date stated in the Notice of Removal)." USPS's Mem. at 8 (citations omitted). Because he "did not initiate EEO contact until after both of those dates had passed, on September 9, 2019. . . . Doe's claims must be dismissed." *Id.* (citations omitted). Similarly, USPS argues that with respect to his hostile work environment claims (Counts II, IV, and VI of the SAC), "[t]he instances of discrimination that Doe did perceive while working at the postal service (none of which relate to his sex, gender, or sexual orientation) all necessarily occurred more than 45

days before his initial contact with an EEO counselor on September 9, 2019." *Id*. at 10. "This is so," according to USPS, "because, in accordance with the Notice of Removal, Doe did not work in a postal service facility after April 20, 2019, which was 142 days before his initial contact with an EEO counselor. Doe's hostile work environment claims in Counts II, IV, and VI must therefore be dismissed." *Id*. at 10-11.

Anticipating Doe's argument that the "effective date" of his termination was extended to August 19, 2019, by the Step B Decision issued as part of the union grievance process, USPS contends that Doe "was aware both (a) that he was being removed from the postal service, and (b) of the specific effective date of July 20, 2019." USPS's Mem. at 9. Moreover, USPS points to case law for support for the proposition that remedies like Doe's Step B Decision cannot alter the timeliness provisions of regulations applicable to Title VII claims. *See id*. at 9. Finally, USPS contends that none of the limited circumstances warranting equitable tolling under the relevant regulation apply to save Doe's claims here.[6] *See id*. at 11-14.

### B. Doe's arguments against dismissal

As with USPS's arguments, Doe's are relatively straightforward. According to Doe, "[t]he effective date of the personnel action was extended until August 19, 2019" by the Step B Decision, "therefore Doe was required to make contact with an EEO counselor within 45 days of August 19, 2019, or by October 3, 2019. Plaintiff did so on September 9, 2019. Defendant's Motion to Dismiss on this basis should be denied." Doe's Opp'n. at 5. Doe contends that the

---

[6]     In its Reply Memorandum, USPS makes the additional arguments that (1) Doe's contentions regarding a continuing violation cannot save his hostile work environment claims, (2) Doe's contention that the original dismissal of his formal complaint by USPS EEO's Investigative Services Office constitutes a waiver by USPS of Doe's untimely initiation of the EEO process is incorrect, and (3) discovery is unnecessary and the issues presented in its motion to dismiss can be decided on the law. *See generally* USPS's Reply Memorandum ("USPS's Reply"), ECF No. 33.

plain language of the Step B Decision should control here: "The date for the personnel action to become effective was extended to August 19, 2019, this is what was ultimately communicated to Doe [in the Step B Decision] and this is what he was ultimately led to believe. The language actually used when referring to the date being extended thirty (30) days from July 20, 2019, to August 19, 2019, as communicated to Doe [in the step B Decision] was, 'effective date of the personnel action.'" *Id*. at 6. Doe moreover argues that the language used in the Step B Decision—"effective date of the personnel action"—is consistent with the language of 29 C.F.R. § 1614.105(a)(1)— "***the*** effective date of the action." *Id*. at 7 (emphasis in original).

Doe contends that if he is found to have belatedly initiated contact with an EEO counselor, he is entitled to equitable tolling, first, because "despite due diligence Doe was prevented by circumstances beyond his control from contacting the counselor within the time limits." Doe's Opp'n. at 13. Doe considers the representation in his Step B Decision that the effective date of his removal was August 19, 2019, to have effectively prevented him, despite reasonable diligence, from timely initiating EEO contact. *Id*. Secondly, Doe claims he is entitled to equitable tolling because he "did not know that his wrongful termination was on account of his sexual orientation, or know about the specific discriminatory LGBT bias which existed against him at the postal branch he worked at, until he received the direct evidence of the discrimination in the form of the text messages from former USPS Letter Carrier, Mr. John Bond," which did not occur until August 10, 2019. *Id*. at 14. Additionally, Doe contends his entitlement to equitable tolling is supported by the fact that (1) he "does not recollect being advised of the 45-day timeframe to contact an EEO counselor," (2) he "has no prior experience with these administrative procedures," and (3) he "was not represented or assisted by counsel

during the timeframe in which [USPS] contends Doe's period to contact an EEO counselor elapsed." *Id.* at 16.

In addition to equitable tolling, Doe claims USPS should be equitably estopped from arguing to bar his suit based on the 45-day limitations period based on USPS's alleged misrepresentation of the effective date. According to Doe, USPS "actively misled Doe regarding the effective date of the personnel action and should not be permitted to now backtrack now to escape liability by taking advantage of their misrepresentation to Doe," and "[t]o the extent there was ambiguity, then the ambiguity was not created by Doe."[7] Doe's Opp'n. at 7. Doe claims that "under the specific facts pled here, it was . . . agreed upon by Doe, his union, and the USPS, that the effective date of the personnel action for Doe would be extended thirty (30) days from July 20, 2019 to August 19, 2019, to permit Doe to resign in lieu of being terminated after twelve (12) years of loyal service. And, Doe was not otherwise notified of the 45-day timeframe."[8] *Id.* at 9-10.

Doe also contends that USPS "[w]aived the 45-day argument by failing to include it initially [ ] in the original notice of dismissal of the EEO Complaint." Doe's Opp'n. at 19. According to Doe, "[t]he 45-day issue with respect to the effective date of the personnel action

---

[7] Doe also criticizes what he sees as USPS's abandonment of language that supports Doe's position: Doe claims in its previous filings, USPS "used language such as the '*original* effective date,' referring to the earlier of the two dates, July 20, 2019, rather than the later of the two dates, August 19, 2019"—language which Doe claims USPS has now abandoned. *Id.* (emphasis added).

[8] Additionally, Doe states that "the Notice of Dismissal for Doe's EEOC complaint lists the effective date of the action as August 19, 2019." Doe's Opp'n. at 10. There are, however, two problems with this observation. First, the dismissal Doe references was not that of an "EEOC" complaint, but rather dismissal of his USPS *EEO* complaint. Second, and more importantly, the decision of dismissal does not represent that the effective date actually was August 19, 2019. Instead, it observes that *Doe alleges* that he was issued a Notice of Removal with an effective date of August 19, 2019.

was not raised until Attorney Melley raised this issue for the first time in Federal district court. This is not proper and the issue has been waived." *Id*.

Finally, Doe argues that the "continuing violation theory" acts to save his hostile work environment claims. Doe's Opp'n. at 20. He states that he was subjected to a "sadistic, discriminatory, and hostile work environment" as a gay man, and the particular allegations of the SAC are sufficient to invoke application of the continuing violation theory. *Id*.

## IV.  LEGAL STANDARD

Although the Court reviews USPS's second motion to dismiss under the same, well-known Rule 12(b)(6) standard identified in the Court's Opinion dismissing Doe's Amended Complaint,[9] the sufficiency of Doe's allegations is not at issue here.[10] Rather, the sole basis for USPS's motion is the untimeliness of Doe's commencement of administrative contact pursuant to 29 C.F.R. § 1614.105(a)(1). "Timeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim. . . . 'A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim . . . for [administrative] conciliation or resolution.'" *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997) (quoting *Hornsby v. U.S. Postal Serv.*, 787 F.2d 87, 90 (3d Cir. 1986)). Because "[i]t is a basic tenet of

---

[9]  With respect to the sufficiency of a plaintiff's allegations, the Court determines whether based upon the facts as alleged, which are taken as true, and disregarding legal contentions and conclusory assertions, the pleadings state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see Ashford v. Francisco*, No. 1:19-CV-1365, 2019 WL 4318818, at *2 (M.D. Pa. Sept. 12, 2019) ("To avoid dismissal under Rule 12(b)(6), a civil complaint must set out sufficient factual matter to show that its claims are facially plausible.").

[10]  USPS does, at the end of its moving papers, request that if Doe's claims are not dismissed on timeliness of exhaustion grounds, that they be dismissed based on purported insufficiency of the allegations to state plausible entitlements to relief. *See* USPS's Mem. at 15. However, USPS offers no substantive argument in support of this request, which the Court declines to entertain.

administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief," *Robinson*, 107 F.3d at 1020, "a federal employee's claims under Title VII, the R[ehabilitation] A[ct] and the ADEA must be, and routinely are, dismissed if the employee fails to properly exhaust," *Marley v. Donahue*, 133 F. Supp. 3d 706, 716 (D.N.J. 2015) (collecting cases).

In addressing the issue of exhaustion, and as noted in its initial Opinion, the Court may take judicial notice of certain materials beyond the four corners of the SAC.  Specifically, in the context of a motion to dismiss, "[a]s regards exhaustion of remedies," administrative documents like EEO filings may be properly considered "not for their truth but only for their legal effect." *Miller v. Soc. Sec. Admin.*, 412 F. Supp. 3d 491, 495 (D.N.J. 2019); *see id.* at 494 ("[C]ourts considering motions to dismiss have relied on EEO files that are integral to the allegations of the complaint." (collecting cases)); *see also In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] *integral to or explicitly relied* upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997) (emphasis in original), or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document,' *PBGC v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).").

## V.    DISCUSSION

### A.    Whether Doe failed to timely initiate EEO contact

The Court begins with the language of the regulation at the heart of USPS's second

motion to dismiss, 29 C.F.R. § 1614.105(a)(1):[11]

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> > (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

The Court focuses on the application of § 1614.105(a)(1) as it pertains to claims of hostile work

environment and wrongful termination in particular, as these are the two types of claims Doe

asserts in the SAC.[12]  Regarding claims of hostile work environment, the regulation is clear

when the 45-day clock commences:  "the date of the matter alleged to be discriminatory."  *Id.*

---

[11]    This regulation sets forth the Title VII pre-complaint procedures applicable to federal employees like Doe.  *See* 29 C.F.R. §§ 1614.101-1614.102; *see also* 42 U.S.C. § 2000e-16. Importantly, the 45-day EEO initiation prerequisite is not jurisdictional and is akin to a statute of limitations.  *See Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997)

[12]    Count I of the SAC asserts wrongful discharge based on gender/gender stereotyping in violation of Title VII; Count II asserts hostile work environment based on gender/gender stereotyping in violation of Title VII; Count III asserts wrongful discharge based on sexual orientation in violation of Title VII; Count IV asserts hostile work environment based on sexual orientation in violation of Title VII; Count V asserts wrongful discharge based on disability in violation of Section 504; and Count VI asserts hostile work environment based on disability in violation of Section 504.  *See generally* SAC.

Claims brought under Title VII and Section 504 are subject to the same exhaustion procedures, as the Rehabilitation Act incorporates the procedures and remedies established in Title VII, "includ[ing] the incorporation of the prerequisite exhaustion of administrative remedies."  *Wilson v. MVM, Inc.*, 475 F.3d 166, 173 (3d Cir. 2007); *Spence v. Straw*, 54 F.3d 196, 202-03 (3d Cir. 1995) ("[W]e have found that a litigant must exhaust administrative remedies under Title VII before filing suit against a federal agency alleging discrimination on the basis of handicap under sections 504 and 505(a)(2) of the Rehabilitation Act . . . ."); *see* 29 U.S.C. § 794a(a)(1).

With respect to a "personnel action," which includes wrongful termination, *see Komis v. Sec'y of United States Dep't of Labor*, 918 F.3d 289, 296 (3d Cir. 2019) (explaining that "personnel action" under Title VII covers "actions potentially altering the terms and conditions of [ ] employment"), the moment of commencement—"within 45 days of the effective date of the action"—is a bit more complex to unravel. As explained in detail below, the Court is forced to conclude that Doe ran afoul of the 45-day limitations period of § 1614.105(a)(1) for both his hostile work environment and wrongful termination claims.

Beginning with Doe's hostile work environment claims, the Court finds that 29 C.F.R. § 1614.105(a)(1)'s 45-day clock began to run no later than April 22, 2019. Even drawing all reasonable inferences in Doe's favor, this was the last day Doe could have been at his place of employment, as it was on this date that USPS issued him "written notification of [his] placement in an emergency, off-duty non-pay status effective April 20, 2019," for an alleged incident between Doe and a coworker that occurred on April 20, 2019. Notice of Emergency Placement. The Notice of Emergency Placement further advised Doe that he was "prohibited from entering any non-public areas of any Postal installation" without receiving written approval from USPS. *Id*. He was subsequently issued a Notice of Removal. Because the EEO administrative record indicates that Doe could not—and because there are no allegations that he in fact did—return to work after April 22, 2019 at the latest, he could not have suffered from any discriminatory conduct constituting a hostile work environment after April 22, 2019. Simply put, Doe was not present at or in his workplace so as to suffer from a hostile work environment after this date; indeed, he was not working or receiving pay after this date, and therefore cannot be said to have had a *work environment. See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("When the *workplace* is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive *working environment.")* (emphasis added) (quotation marks and citations omitted); *cf. Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 443 (E.D. Pa. 2014) (finding alleged incidents of harassment that occurred at the hands of a coworker who "was transferred to a different facility" could not support a claim of hostile work environment), *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60, 64 (3d Cir. 2015), ("The District Court correctly noted that . . . [plaintiff's] alleged harasser, was transferred to a different work location in early October 2010 and [plaintiff] did not return to work after his suspension until September 27, 2010. Therefore, [plaintiff and his harasser] did not work together for an extended period of time within the [limitations period] . . . .").[13]  Doe's initiation of EEO contact on September 9, 2019, therefore fell well beyond the 45-day limitations period for his hostile work environment claims.[14]

Turning to Doe's wrongful termination claims, Doe similarly initiated EEO contact beyond the 45-day limitations period set forth in 29 C.F.R. § 1614.105(a)(1), for the following reasons.  The Supreme Court has explained that a wrongful termination claim ordinarily accrues when an employee is notified of his termination, rather than on the last day of his employment. In *Green v. Brennan*, 136 S. Ct. 1769 (2016), the Court explained at length why, as applied to a

---

[13]     *Cf. Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) ("At bottom, a claimant must show that she is subject to an *abusive working environment*. Pueschel has not met this requirement because she cannot demonstrate that she was part of the working environment that she alleges was abusive. Pueschel went on LWOP in 1994. The incidents that she alleges created a hostile work environment occurred in 1997 and 1998.") (emphasis in original) (quotation marks and citations omitted).

[14]     Moreover, as far as accrual goes, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).  Therefore, to the extent Doe claims he was not fully aware of the extent of any alleged harassment until he received the text messages on August 10, 2019, outlining discriminatory statements—although he appears to limit this argument to the context of his wrongful termination claims—his becoming aware of prior harassment is not the proper point of focus.

Title VII claim of *constructive* discharge, § 1614.105(a)(1)'s 45-day limitations period begins to run at the time of notice of an employee's resignation, not the date of his actual resignation.

*Green*'s holding flowed from the Court's application of the "standard rule for limitations periods" to the 45-day limitations period set forth in§ 1614.105(a)(1). That rule holds that a "limitations period commences when the plaintiff has a complete and present cause of action." *Green*, 136 S. Ct. at 1776 (quotations and citations omitted). The Court in *Green* reasoned that as a claim of actual discharge has two elements—discrimination and termination—a claim of constructive discharge similarly has two elements—discrimination and resignation—and it is at the time the second element occurs that the claim accrues:

> [A] claim that an employer constructively discharged an employee is no different from a claim that an employer actually discharged an employee. An ordinary wrongful discharge claim also has two basic elements: discrimination and discharge. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993); 1 B. Lindemann, P. Grossman, & C. Weirich, Employment Discrimination Law 21-33 (5th ed. 2012) (Lindemann) ("The sine qua non of a discharge case is, of course, a discharge"). The claim accrues when the employee is fired. At that point—and not before—he has a "complete and present cause of action." So at that point—and not before—the limitations period begins to run.

*Id*. at 1777. The Court further opined on the relationship between constructive discharge, actual discharge, and the issue of notice:

> A notice rule flows directly from this Court's precedent. In [*Delaware State College v. Ricks*, 449 U.S. 250 (1980)] and [*Chardon v. Fernandez,* 454 U.S. 6 (1981)], the Court explained that an ordinary wrongful-discharge claim accrues—and the limitations period begins to run—when the employer notifies the employee he is fired, not on the last day of his employment. *Ricks,* 449 U.S. at 258-59; *Chardon,* 454 U.S. at 8. Likewise, here, we hold that a constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation.

*Green*, 136 S. Ct. at 1782.

Applying the above principles to Doe's circumstances, the Court finds that, as to Doe's wrongful termination claims, § 1614.105(a)(1)'s 45-day limitations period commenced no later

than June 14, 2019—the date upon which Doe received the June 12 Notice of Removal.  *See* Tracking Report.  It was upon Doe's receipt of the Notice of Removal that he had "a complete and present cause of action" for wrongful termination.  It was therefore at this time that Doe's claims for wrongful termination accrued, and that the 45-day limitations period began to run.

The fact that Doe's Notice of Removal set a future date of "effective" removal does not alter this conclusion.  In *Chardon v. Fernandez*, 454 U.S. 6 (1981), the Supreme Court explained as follows regarding an employer's notice of termination followed by a designated date of actual termination:

> In each case [*Delaware State College v. Ricks*, 449 U.S. 250 (1980) and *Chardon*] the operative decision was made—and notice given—in advance of a designated date on which employment terminated.
>
> In *Ricks*, we held that the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful.  The fact of termination is not itself an illegal act. In *Ricks*, the alleged illegal act was racial discrimination in the tenure decision.  Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights. There were no other allegations, either in *Ricks* or in these cases, of illegal acts subsequent to the date on which the decisions to terminate were made. As we noted in *Ricks*, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."  In the cases at bar, respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which suit must be filed.

*Chardon*, 454 U.S. at 7-8 (emphasis in original) (citations and footnote omitted).  Thus, that the June 12, 2019 Notice of Removal set an "effective date" of July 20, 2019, does not alter the fact that it was Doe's receipt of the Notice that was the moment of the alleged discriminatory action for purposes of his wrongful termination claims, and therefore, the moment these claims accrued.[15]

---

[15]     The Court notes the language of *Hamiel v. Donahoe*, a case cited by both parties, stating that "[f]or purposes of § 1614.105(a)(1), 'termination of employment occurs when an employee

For the above reasons, the Court finds that Doe's initiation of contact with an EEO counselor on September 9, 2019, fell well beyond the limitations period of 45 days as set forth in 29 C.F.R. § 1614.105(a)(1).  That limitations period began to run no later than April 22, 2019 and June 14, 2019, for Doe's hostile work environment and wrongful termination claims, respectively.

### B. Whether the union grievance process and resulting Step B Decision "extended" commencement of the 45-day limitations period

As noted previously, Doe's primary argument is that "[t]he effective date of the personnel action was extended until August 19, 2019" by the Step B Decision, and "therefore Doe was required to make contact with an EEO counselor within 45 days of August 19, 2019, or by October 3, 2019. Plaintiff did so on September 9, 2019. Defendant's Motion to Dismiss on this

---

"stop[s] work and cease[s] receiving pay and benefits."'" No. CIV.A. 14-4131, 2015 WL 2255258, at *3 (E.D. Pa. May 14, 2015) (quoting *Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 234 (1976)).  While the court in *Hamiel* found that the plaintiff's wrongful discharge claims accrued on the date she was issued a Step B Decision—the initial notice of removal did not indicate a hard-and-fast "effective" date— the above-quoted language nonetheless appears to have the potential to conflict with the Supreme Court's reasoning in *Green*, *Ricks*, and *Chardon*.  Indeed, the one case citing *Hamiel* identifies this potential conflict.  *See Maziarz v. Brennan*, No. 15-CV-30098, 2016 WL 7799647, at *5 (D. Mass. Aug. 3, 2016) ("Applying *Ricks*, it would seem that Plaintiff's claim accrued, and the limitation period began running, on December 27, 2012, the day she received the [notice of removal]. . . . In the alternative, there are cases that have measured the 45-day limitation period from the date on which a notice of removal, or its equivalent, became effective [thereafter referencing *Hamiel*].") *report and recommendation adopted*, No. CV 15-30098, 2016 WL 5334463 (D. Mass. Sept. 22, 2016).

To the extent a conflict between approaches exists, this Court follows the lead of the Supreme Court, as laid out in this Opinion.  However, were the Court to follow the approach set forth in *Hamiel*, it appears that the date of accrual of Doe's wrongful termination claims for purposes of the 45-day limitations period would occur even earlier than June 14, 2019.  This is because on April 22, 2019, Doe was issued notice that he was being placed "in an emergency, off-duty non-pay status effective April 20, 2019."  Notice of Emergency Placement.  He never returned to active, pay-status, nor was he permitted to return to his physical place of employment, prior to his subsequent termination.  As it was on April 22, 2019, that Doe "stop[ped] work and cease[d] receiving pay and benefits," under the reasoning of *Hamiel*, it was on this date that Doe's termination occurred and his claims of wrongful termination accrued "[f]or purposes of § 1614.105(a)(1)."  *Hamiel*, 2015 WL 2255258, at *3.

basis should be denied." Doe's Opp'n. at 5. This is in essence an argument for equitable tolling of the limitations period based on Doe's pursuit of a remedy through the grievance procedure. Separate and apart from the applicability of the explicit tolling provisions of 29 C.F.R. § 1614.105(a)(2)—which is discussed further below—in the Court's view, the relevant case law and legal principles dictate that Doe's engagement with the union grievance process cannot act to toll the 45-day limitations period, commencement of which began on April 22, 2019 and June 14, 2019 for Doe's claims.

In *Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc*., 429 U.S. 229 (1976), the Supreme Court stated as follows regarding the relationship between Title VII remedies and remedies stemming from collective bargaining agreements:

> [P]etitioners' arguments for tolling the statutory period for filing a claim with the EEOC during the pendency of grievance or arbitration procedures under the collective-bargaining contract are virtually foreclosed by our decisions in *Alexander v. Gardner-Denver Co*., 415 U.S. 36 (1974), and in *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975). In *Alexander* we held that an arbitrator's decision pursuant to provisions in a collective-bargaining contract was not binding on an individual seeking to pursue his Title VII remedies in court. We reasoned that the contractual rights under a collective-bargaining agreement and the statutory right provided by Congress under Title VII "have legally independent origins and are equally available to the aggrieved employee," 415 U.S., at 52, and for that reason we concluded:

> "(I)n instituting an action under Title VII, the employee is not seeking review of the arbitrator's decision. Rather, he is asserting a statutory right independent of the arbitration process." *Id*., at 54.

> One Term later, we reaffirmed the independence of Title VII remedies from other pre-existing remedies available to an aggrieved employee. In Johnson v. Railway Express Agency, we held that the timely filing of a charge with the EEOC pursuant to § 706 of Title VII did not toll the running of the statute of limitations applicable to an action, based on the same facts, brought under 42 U.S.C. s 1981. In reaffirming the independence of Title VII remedies from other remedies, we noted that such independence might occasionally be a two-edged sword, but "in the face of congressional emphasis upon the existence and independence of the two remedies," we were disinclined "to infer any positive preference for one over the

other, without a more definite expression in the legislation Congress has enacted," 421 U.S., at 461.

*Int'l Union*, 429 U.S. at 236-37 (footnotes omitted).[16]

In the Court's view, Doe's argument that the 45-day limitations period was equitably tolled by his engagement with the union grievance process, which resulted in a Step B Decision that indicated an amended "effective date" of July 20, 2019, is "virtually foreclose[d]" by the reasoning of *Int'l Union* and the cases it relies upon. Because statutory Title VII remedies and remedies resulting from a collective bargaining agreement's grievance process "have legally independent origins and [were] equally available" to Doe, it is clear that either his engagement in the grievance process or any result of that process—*i.e.*, a modified effective date of termination as presented in a Step B Decision—cannot act to equitably toll commencement of the 45-day limitations period.[17]

---

[16] *See also Hamiel*, 2015 WL 2255258, at *3 ([I]t is well-settled that a right of arbitration under collective-bargaining is independent from the Title VII remedies provided by Congress. . . . Thus, mere participation in arbitration does not toll § 1614.105(a)(1)'s limitations period." (citing *Int'l Union*, 429 U.S. at 236-37 and *Word v. Potter*, 149 F. App'x 97, 100 n.4 (3d Cir.2005))).

[17] It is worth noting that Doe's argument is primarily based on (1) the phrasing of the Step B Decision vis-à-vis his initial Notice of Removal and (2) perceived changes to the phrasing of USPS's arguments as presented in its second motion to dismiss vis-à-vis its first motion to dismiss. Doe cites to only one case—*Hamiel*—for the proposition that the Step B Decision acted to "extend" the effective date. *See* Doe's Opp'n. at 8-10. *Hamiel* is worth discussing briefly.

The court in *Hamiel* agreed with the defendant that the 45-day limitations period was triggered the date a Step B Decision was rendered; however, unlike here, the defendant was not arguing that the notice of removal triggered the limitations period. *See Hamiel*, 2015 WL 2255258, at *3 n.3. To be sure, the basis for the court's decision in *Hamiel* was that there was no identifiable "effective date" of the plaintiff's termination prior to the Step B Decision, and "[u]ltimately, it was Plaintiff's pursuit of a grievance that firmly established the effective date of termination." *Id*. at *4. The Court agrees with USPS that *Hamiel* does not stand for the general proposition that filing a grievance and receiving a Step B Decision with a modified effective date tolls the limitations period. Indeed, the Court in *Hamiel* stated just the opposite: "[T]ermination of employment occurs when an employee 'stop[s] work and cease[s] receiving pay and benefits,' not when the employee suffers an unfavorable conclusion of the grievance-arbitration procedure.

**C.      Whether Doe is entitled to equitable tolling or any other relief**

As noted previously, the 45-day limitations period contained in 29 C.F.R. §

1614.105(a)(1) is not jurisdictional in nature, and rather is akin to a statute of limitations.  *See*

*Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).  Therefore, equitable tolling may apply to

remedy Doe's belated EEO contact.  Section 1614.105(a)(2) sets forth the following limited

circumstances that warrant tolling of the limitations period contained in § 1614.105(a)(1):

> [W]hen the individual shows [1] that he or she was not notified of the time limits
> and was not otherwise aware of them, [2] that he or she did not know and reasonably
> should not have been known that the discriminatory matter or personnel action
> occurred, [3] that despite due diligence he or she was prevented by circumstances
> beyond his or her control from contacting the counselor within the time limits, or
> [4] for other reasons considered sufficient by the agency or the Commission.

If Doe can show his circumstances fall into one of these categories, "his claims would not in fact

be barred for his failure to contact the counselor within the proscribed 45 days."[18]  *Shenkan v.*

*Potter*, 71 F. App'x 893, 896 (3d Cir. 2003)

As recounted, Doe claims he is entitled to the benefit of equitable tolling because (1)

"despite due diligence [he] was prevented by circumstances beyond his control from contacting

the counselor within the time limits"—which Doe claims was due to the representation in his

Step B Decision that his effective termination date had been extended; Doe's Opp'n. at 13; (2) he

"did not know that his wrongful termination was on account of his sexual orientation, or know

---

Thus, mere participation in arbitration does not toll § 1614.105(a)(1)'s limitations period."  *Id*. at
*3 (citation omitted).

    While, as noted previously, the Court does not necessarily endorse *Hamiel*'s approach to
determining commencement of the limitations period in light of its potential conflict with
Supreme Court precedent, the Court fully endorses *Hamiel*'s recognition of the independence
between Title VII and union grievance processes, and the latter's failure to effect timing of relief
sought under the former.
[18]      "In addition, a plaintiff claiming the 'unawareness' exception must demonstrate that [the]
lack of awareness as to defendant's actual motivation was reasonable."  *Hamiel*, 2015 WL
2255258, at *4 (quotation marks and citations omitted).

about the specific discriminatory LGBT bias which existed against him until August 10, 2019, when he received the text messages from a former coworker, *id*. at 14; (3) he "does not recollect being advised of the 45-day timeframe to contact an EEO counselor," *id*. at 16; (4) he "has no prior experience with these administrative procedures," *id*. and (5) he "was not represented or assisted by counsel during the time frame in which [USPS] contends Doe's period to contact an EEO counselor elapsed," *id*.

The Court finds all but one of Doe's arguments—the issue of actual or constructive notice of the 45-day period for initiating EEO contact, which is addressed below—to be without merit. Regarding § 1614.105(a)(2)'s second set of circumstances—that Doe did not and should not have known that the discriminatory conduct or personnel action occurred—his arguments are belied by the allegations in the SAC, which indicate Doe was aware of myriad instances of alleged discriminatory conduct well before he received the August 10, 2019 text messages.[19] *See, e.g.*, SAC ¶ 38. Doe's argument as to § 1614.105(a)(2)'s third set of circumstances—that despite due diligence, Doe was prevented by circumstances beyond his control from initiating timely EEO contact—is similarly without merit. The argument that alleged confusion about the appropriate commencement date of the limitations period, even in light of the Step B Decision, cannot plausibly be considered covered by this equitable tolling provision. Nor does Doe provide any legal support for this contention. Finally, in the absence of any unique circumstances, the Court does not find the regulation's fourth set of circumstances—the so-called "catch all" provision—to be satisfied here. Indeed, Doe's allegations that USPS "actively

---

[19]     Moreover, to the extent Doe simply believed he did not have sufficient evidence of discrimination to meet with an EEO counselor, this argument is insufficient to invoke equitable tolling. *See Discenza v. Hill*, 221 F. App'x 109, 111 (3d Cir. 2007) (explaining that plaintiff's "misapprehension that evidence sufficient to establish a prima facie case of discrimination was required before consulting with an EEO counselor" is "insufficient to justify equitable tolling").

misled Doe regarding the effective date of the personnel action," Doe Opp'n. at 17, which might justify invocation of this provision, is conclusory and, in the Court's view, facially implausible.[20]

Doe's one argument that could conceivably have merit pertains to whether USPS provided sufficient notice of 29 C.F.R. § 1614.105(a)(1)'s 45-day limitations period, without which Doe might be entitled to equitable tolling of that period under § 1614.105(a)(2). While Doe claims he "does not recall being notified of the 45-day time limit" to seek EEO contact, Doe's Opp'n. at 17, the EEO administrative record contains an investigation affidavit, completed on December 26, 2019, certifying that a November 2018 USPS EEO poster was posted by the employee entrance to the Allentown USPS branch and had been posted there for at least two years.[21] *See* ECF No. 31-10. The issue then would be, assuming the affidavit is correct and Doe did not possess actual notice of the limitations period, whether the placement and contents of the poster, in addition to any other considerations—*e.g.*, any information USPS may have given to Doe regarding the 45-day limitations period at employee trainings, additional management affidavits, evidence regarding Doe's previous experience with the EEO process, etc.—are sufficient to imbue Doe with constructive notice of the 45-day period.

---

[20] Doe also makes this argument in favor of equitable estoppel. There is no plausible claim of misrepresentation or misleading on USPS's part.

Additionally, largely for reasons identified by USPS in their motion papers, the Court finds that Doe's several other miscellaneous arguments for relief from his untimely EEO contact—*i.e.*, his claim that USPS waived their arguments related to the 45-day limitations period, and that his hostile work environment claims are saved by a "continuing violation theory,"—are also without merit. *See Illas v. Gloucester Cty. Sheriff's Dep't*, No. CIV. 14-4061, 2015 WL 778806, at *6 (D.N.J. Feb. 24, 2015) (finding a continuing violation theory could not save untimely claims because, like Doe here, the plaintiff's claims accrued at the time of the last alleged discriminatory act, which for Doe could not have been after his last day at work on April 22, 2019).

[21] This contradicts Doe's statement that "[t]here appears to be no evidence Doe was notified of the 45-day time limit to seek EEO counseling during the subject timeframe." Doe's Opp'n. at 17.

On the issue of constructive notice as it pertains to EEO posters, "the Court must determine if the requisite EEO posters, which would provide information as to the forty-five day requirement, were posted . . . . Second, the Court must determine, by analyzing the placement of the posters, if the posters were reasonably geared to inform the complainant of the time limits." *Hatcher v. Potter*, No. CIV.A. 04-2130, 2005 WL 3348864, at *4 (E.D. Pa. Dec. 7, 2005) (citing *Clark v. Runyon,* 116 F.3d 275, 277 (7th Cir. 1997) and *Johnson v. Runyon,* 47 F.3d 911, 918 (7th Cir. 1995)), *aff'd*, 196 F. App'x 120 (3d Cir. 2006).[22]

The EEO record before the Court does not contain a copy of the EEO poster that USPS claims was posted at Doe's place of work prior to his termination, nor does it provide any other information about its contents or posted location. Additionally, there is no other evidence before the Court which it could consider at this stage of the proceedings as to Doe's constructive (or actual) notice of 29 C.F.R. § 1614.105(a)(1)'s 45-day limitations period. For these reasons, and in abundance of caution as to Doe's rights, the Court declines to dismiss the SAC at this early date on the basis of Doe's failure to timely initiate contact with an EEO counselor. Rather, the Court will, in its discretion, permit a brief period for discovery into the limited issue of Doe's actual or constructive notice regarding the 45-day limitations period. If, after discovery into the issue, USPS is capable of producing evidence sufficient to show that Doe had actual or constructive notice of the limitations period, then in light of the previous findings and conclusions contained in this Opinion, Doe's SAC will be dismissed for Doe's failure to timely exhaust his administrative remedies.[23]

---

[22] The Third Circuit found no issue with the district court's adoption of the Seventh Circuit's standard for determining constructive notice. *See also Chatt v. Potter*, No. CIV. 05-346, 2007 WL 1491401, at *2 (W.D. Pa. May 21, 2007).

[23] *See Hatcher*, 196 F. App'x at 123 ("Based on the testimony and evidence provided at the bench trial, following a ninety-day period of discovery on the issue of notice, the District Court

## VI.     CONCLUSION

For the reasons set forth above, USPS's motion to dismiss the SAC is denied based on the Court's inability to determine at this time whether Doe had notice regarding 29 C.F.R. § 1614.105(a)(1)'s 45-day limitations period for initiating contact with an EEO counselor.[24]  The Court will therefore permit a brief period of discovery into the limited issue of actual or constructive notice as discussed herein.  Following this discovery period, the Court will permit limited motion practice on the issue of Doe's notice (or lack thereof).

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

concluded that Appellant did have constructive notice of the 45–day filing requirement. In reaching this determination, the Court found that the posters contained sufficient information regarding the time period for filing an EEO complaint and were displayed in areas where postal employees such as Appellant worked and by which they regularly passed. This finding was not clearly erroneous.").

[24]     The Court also declines USPS's request to dismiss Doe's claims based on the purported insufficiency of Doe's allegations.  *See* USPS's Mem. at 17.