UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOHN DOE,<br>    Plaintiff, | : | |
| v. | : | No. 5:19-cv-05885 |
| LOUIS DEJOY, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,<br>    Defendant. | : | |

**O P I N I O N**

**USPS's Motion for Summary Judgment, ECF No. 38—GRANTED**

**Joseph F. Leeson, Jr.**                         **March 1, 2021**
**United States District Judge**

I.   INTRODUCTION

  This is an employment discrimination action brought under Title VII of the Civil Rights Act of 1964 ("Title VII") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Plaintiff John Doe ("Doe"),[1] who was a letter carrier with the United States Postal Service ("USPS"),[2] claims he was harassed by coworkers and eventually terminated on account of his sexual orientation and HIV-positive status. The Court has issued multiple Opinions and Orders in this case to date resolving several preliminary issues. *See* ECF Nos. 17-18, 27-28, 34-35. The

---

[1]   The Plaintiff has been granted leave to proceed under a pseudonym on a conditional basis. *See* ECF Nos. 17-18.
[2]   The Court recognizes that the proper Defendant in this Title VII action is Louis DeJoy in his official capacity as Postmaster General. *See* 42 U.S.C. § 2000e-16(c). For ease of comprehension and consistency with the Court's prior Opinions and Orders, the Court refers to the Defendant as "USPS." *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

most recent Opinion, issued November 4, 2020, addressed USPS's second motion to dismiss Doe's pleadings. *See* ECF No. 34. In that Opinion, the Court found that the ability of Doe to proceed on his remaining claims hangs on the resolution of a single issue: whether Doe had actual or constructive notice of a certain limitations period—specifically, the period of time within which he was obligated to commence the administrative pre-complaint process as set forth by federal regulation.[3] The Court concluded that it could not resolve this issue on the record before it. It therefore directed the parties to engage in fact discovery followed by summary judgment motion practice, both limited to the single issue of whether Doe had actual or constructive notice of the relevant 45-day limitations period. *See* ECF No. 34 at 21-23.

The parties have concluded their fact discovery into the issue of notice and USPS now moves for summary judgment, contending that the undisputed facts leave no question that Doe had constructive notice of the limitations period. Doe opposes the motion. Upon consideration of the parties' submissions and the undisputed factual record, and for the reasons set forth below as well as in the Opinion issued November 4, 2020, the Court agrees that there can be no genuine dispute that Doe had constructive notice of the 45-day limitations period. He is therefore not entitled to an extension of the limitations period. Because Doe has failed to timely exhaust his

---

[3] The relevant regulation, 29 C.F.R. § 1614.105(a)(1), requires federal employees who believe they were victims of discrimination made unlawful by, *inter alia*, Title VII and Section 504, to "initiate contact" with the proper administrative authority (an Equal Employment Opportunity ("EEO") counselor) within 45 days of the perceived discrimination to begin pre-complaint processing. However, if it can be shown that a complainant was not given sufficient notice of the 45-day limitations period, that period may be extended. *See* 29 C.F.R. § 1614.105(a)(2). Because the Court determined that Doe failed to "initiate contact"—and therefore failed to commence the administrative pre-complaint process—within 45 days of the perceived unlawful conduct, the dispositive issue now centers on whether Doe had notice of the 45-day limitations period and, in turn, whether he is entitled to an equitable extension of the 45-day period.

administrative remedies, his claims cannot proceed, and USPS's motion for summary judgment is granted.

## II.     THE UNDISPUTED MATERIAL FACTS[4]

Doe was employed by USPS as a letter carrier from 2007 until mid-2019.  USPS's Statement of Undisputed Material Facts ("USPS SOMF"), ECF No. 39, ¶ 1.  During his tenure with the Postal Service, Doe worked at the Allentown-Postal Road Facility.  *Id*. ¶ 2.  His last day appearing for work at the Allentown-Postal Road Facility was April 22, 2019, on which date Doe was "place[d] in an emergency, off-duty non-pay status" effective April 20, 2019.  *Id*.  On June 12, 2019, a "notice of removal" was issued for Doe's allegedly inappropriate conduct; the notice stated that Doe's removal was effective July 20, 2019.  *Id*.   Doe initiated contact with a USPS Equal Employment Opportunity ("EEO") counselor for pre-complaint processing on September 9, 2019.  *See* ECF No. 31-9 at 2.

The "No FEAR Act"—formally titled the "Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002"—requires each federal agency to provide notice, including written notice and training, to its employees to inform them of the rights and protections available to them under federal antidiscrimination and whistleblower protection laws.  USPS SOMF ¶ 4.  As part of his employment, Doe received No FEAR Act training on August 6,

---

[4]     These facts are taken from parties' factual statements.  The Court generally cites to these statements rather than to the underlying record.  The Court does not recite factual assertions that are not undisputed, not material, not supported by citations to the record, or that are supported by citations to the record the substance of which does not actually provide support.  *See* FED. R. CIV. P. 56(c)(1); Leeson, J., Policies and Procedures §§ (II)(F)(7)-(8).
         Additionally, as the Court writes for the parties and assumes their familiarity with this litigation, the Court declines to restate the lengthy procedural history of the case in this Opinion.

2016, and June 20, 2018. *Id*. ¶ 3.[5] These trainings included the presentation of information regarding the need for USPS employees who believe they were discriminated against to contact an EEO counselor within 45 days of the perceived discriminatory conduct. *Id*. ¶ 5.[6] The No FEAR Act trainings also directed employees to USPS "Poster 72," and USPS "Publication 133," which are discussed in the succeeding paragraphs. *Id*. ¶ 6.[7] Doe does not recall completing the No FEAR Act trainings. *See* Doe's Answer to USPS's SOMF ("Doe Answer"), ECF No. 43, ¶ 5.[8]

USPS "Poster 72," titled "Equal Employment Opportunity Is The Law," provides information to USPS employees about USPS's obligation to afford equal employment opportunity to employees and applicants, regardless of their membership in a protected class.

---

[5]    Documents submitted on behalf of USPS's motion for summary judgment, attached as Exhibit 1 to the Affidavit of Dean A. Gregg, indicate that these trainings, among others, were in fact completed by Doe. *See* ECF No. 39-1.

[6]    Attached as Exhibits to the Declaration of David D. Silverman, submitted in support of USPS's motion for summary judgment, are the No FEAR Act training "visual design report," which reflects the training that was provided to USPS employees in 2016, as well as the No FEAR Act training "storyboard," which reflects the training that was provided to USPS employees from October 2017 to October 2018. *See* ECF No. 39-2. Both the 2016 "visual design report" and the 2017-18 "storyboard" indicate that the 45-day limitations period was part of the subject matter covered in both of the trainings Doe completed. *See id*. at 29, 43, 89, 112.

[7]    The same sources from the underlying record referenced in footnote 6 indicate that Poster 72 and Publication 133 were covered in the 2016 and 2017-18 trainings. *See* ECF No. 39-2 at 29, 42-43, 46-48, 89, 110-11, 115-17.

[8]    Although Doe has submitted an "Answer" to USPS's Statement of Undisputed Material Facts, *see* ECF No. 43, Doe's Answer is filled with improper (and lengthy) legal argument, often regarding issues of law on which the Court has already decided with which Doe disagrees. This is in contravention of both (1) the Undersigned's Policies and Procedures, which require parties opposing a motion for summary judgment to file a "separate, *short*, and *concise* statement" of disputed material facts, Leeson, J., Policies and Procedures §§ (II)(F)(9) (emphasis added), as well as (2) the well-recognized rule that parties should "refrain from legal arguments" in their summary judgment factual statements. *Reichard v. United of Omaha Life Ins. Co.*, 331 F. Supp. 3d 435, 442 n.1 (E.D. Pa. 2018), *aff'd*, 805 F. App'x 111 (3d Cir. 2020). Moreover, Doe's "additional material facts precluding summary judgment" as set forth at the end of his Answer, by and large state legal conclusions rather than factual assertions. Finally, where factual assertions are made, they are not material to the sole issue at hand—notice.

USPS SOMF ¶ 7.  Poster 72 also provides information to USPS employees about what to do if they believe they have been discriminated against because of membership in a protected class, including when and how to begin the EEO process by initiating contact with an EEO counselor within 45 days of the alleged discrimination.  *Id*.  Both the current version of Poster 72, which is dated November 2018, and the prior version of Poster 72, which is dated March 2012, contain the following language related to the need to initiate EEO contact within 45 days of perceived discrimination:

> You must bring individual and class action complaints to the attention of the EEO office by requesting counseling within 45 calendar days of the date of the alleged discriminatory act; within 45 calendar days of the date you knew or reasonably should have known about the discrimination; or if a personnel action is involved, within 45 calendar days of its effective date. If you bring an individual complaint and later believe that your case has class-action implications, you may move for class certification at any reasonable point during the processing of your original complaint.

*Id*. ¶¶ 13, 16.  Since at least early 2016, Poster 72—either the March 2012 version or the November 2018 version—has been displayed, as required, on the "Permanent Postings" employee bulletin board at the Allentown-Postal Road facility.  *Id*. ¶ 8.[9]  The Permanent Postings bulletin board is located just inside the employee entrance to the facility next to the employee break room, and employees regularly walk by the bulletin board when entering or existing the facility.  *Id*. ¶¶ 9-12.[10]

---

[9]     Doe states that he "has no way to know whether Poster 72 was posted at least as early as 2016."  Doe Answer ¶ 18.
[10]    Attached as Exhibits to the Declaration of Dana Eileen Yaglowski, submitted in support of USPS's motion for summary judgment, are images of the two most recent versions of Poster 72, along with images of the bulletin board on which it was (and is currently) posted.  *See* ECF No. 39-3.  Importantly, Doe does not contest that reference to "a 45-day limitations period is contained in the attachments"—presumably the attachments to the Declarations of David D. Silverman and Dana Eileen Yaglowski.  Doe Answer ¶ 6.

In addition to the No FEAR Act trainings and Poster 72, USPS's Employee and Labor Relations Manual ("ELRM") is a source of information pertaining to the relevant 45-day limitations period. USPS SOMF ¶ 17. Pursuant to the ELRM's transmittal letter, the purpose of the ELRM is to provide information to USPS employees to help them "understand[ ] and implement[ ] the programs and processes that contribute to" the Postal Service's goals of "maintaining a skilled and ready workforce that is diverse, engaged, efficient, and safe." *Id*. Section 666.22 of the March 2019 version of the ELRM, as well as all versions of the ELRM going back through at least March 2016, provide as follows:

> **Equal Employment Opportunity Complaint Procedures**
> Any employee or applicant may file a complaint alleging discrimination based on race, color, religion, sex, age (40+), national origin, disability, or alleging reprisal based on protected EEO activity within 45 days of the event believed to be discriminatory. For details, see Publication 133, *What You Need to Know About EEO*.

*Id*. ¶ 18.

USPS "Publication 133," referenced in the training materials above and in the ELRM, additionally provides information on "Beginning the EEO Process in a Timely Manner." USPS SOMF ¶ 19. Page 5 of the November 2018 version of Publication 133 provides as follows:

> To begin the precomplaint process, you must contact the Postal Service Equal Employment Opportunity Office through the online Postal Service EEO efile application at *https://efile.usps.com* or by writing to: NEEOISO – EEO Contact Center, PO Box 21979, Tampa, FL 33622-1979, within 45 calendar days of the alleged discriminatory action, or in the case of a personnel action, within 45 calendar days of the effective date of the action. See 29 CFR 1614 105. A written request to initiate the precomplaint process will be considered timely if it is postmarked within 45 calendar days of the alleged discriminatory action, or in the case of a personnel action, within 45 calendar days of the effective date of the action.

*Id.*

### III. THE SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 412-13 (D.N.J. 2018). In determining if the moving party has satisfied this burden, the Court is obliged to construe all facts and factual inferences in the light most favorable to the non-moving party. *See United States ex rel. Simpson v. Bayer Corp.*, 376 F. Supp. 3d 392, 401 (D.N.J. 2019); *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Bacon*, 357 F. Supp. 3d at 413 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Where the movant shows a *prima facie* entitlement to summary judgment, the burden shifts to the non-movant to point to record evidence creating a genuine issue of material fact. *See* FED. R. CIV. P. 56(e); *Davis v. Quaker Valley Sch. Dist.*, No. 13-1329, 2016 WL 912297, at *8 (W.D. Pa. Mar. 10, 2016), *aff'd*, 693 F. App'x 131 (3d Cir. 2017). "[T]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Gibson-Reid v. Lendmark Fin. Servs., LLC*, No. 2:19-CV-02859, 2019 WL 4139034, at *1 (E.D. Pa. Aug. 30, 2019) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)); *see Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and

pleadings are insufficient to repel summary judgment."). Summary judgment is mandated where a non-moving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . [T]here can be 'no genuine issue of material fact'" where "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

IV.   **DISCUSSION**

    A.   **A Brief Review of the Court's Previous Findings of Law**

In its November 4, 2020 Opinion, the Court made several legal findings central to whether Doe timely initiated contact with a USPS EEO counselor.

The Court first determined that as to Doe's hostile work environment claims, "29 C.F.R. § 1614.105(a)(1)'s 45-day clock began to run no later than April 22, 2019." ECF No. 34 at 12. This is necessarily so, because April 22, 2019 "was the last day Doe could have been at his place of employment, as it was on this date that USPS issued him 'written notification of [his] placement in an emergency, off-duty non-pay status effective April 20, 2019,' for an alleged incident between Doe and a coworker that occurred on April 20, 2019." *Id*. Doe's initiation of EEO contact on September 9, 2019, therefore fell beyond the 45-day limitations period with respect to his hostile work environment claim. *Id*. at 13.

For reasons explained in detail in its Opinion, the Court next found that "as to Doe's wrongful termination claims, § 1614.105(a)(1)'s 45-day limitations period commenced no later than June 14, 2019—the date upon which Doe received the June 12 Notice of Removal." ECF

No. 34 at 14-15.[11]  Consequently, as with his hostile work environment claims, "Doe similarly initiated EEO contact beyond the 45-day limitations period set forth in 29 C.F.R. § 1614.105(a)(1) for purposes of his wrongful termination claims." *Id*. at 13.

Next, the Court determined that Doe's argument that his engagement with his union's grievance process equitably tolled the 45-day limitations period was without merit.  As the Court explained, "statutory Title VII remedies and remedies resulting from a collective bargaining agreement's grievance process 'have legally independent origins and [were] equally available' to Doe." ECF No. 34 at 18.  As such, "it is clear that either his engagement in the grievance process or any result of that process—*i.e.*, a modified effective date of termination as presented in a Step B Decision—cannot act to equitably toll commencement of the 45-day limitations period." *Id.*

Lastly, the Court examined whether Doe was entitled to any other relief from the 45-day limitations period.  The Court determined that the only potential basis for relief was if Doe did not have sufficient notice of its existence—*i.e.*, if Doe was unaware he was required to initiate EEO contact within 45 days of perceived discrimination.[12]  *See* ECF No. 34 at 21.  If such was

---

[11]     "It was upon Doe's receipt of the Notice of Removal that he had 'a complete and present cause of action' for wrongful termination," and "[t]he fact that Doe's Notice of Removal set a future date of 'effective' removal d[id] not alter this conclusion." ECF No. 34 at 15.

[12]     The Court found as follows regarding other potential bases for equitable relief as set forth in § 1614.105(a)(2):

> Regarding § 1614.105(a)(2)'s second set of circumstances—that Doe did not and should not have known that the discriminatory conduct or personnel action occurred—his arguments are belied by the allegations in the [Second Amended Complaint], which indicate Doe was aware of myriad instances of alleged discriminatory conduct well before he received the August 10, 2019 text messages. *See, e.g.*, SAC ¶ 38. Doe's argument as to § 1614.105(a)(2)'s third set of circumstances—that despite due diligence, Doe was prevented by circumstances beyond his control from initiating timely EEO contact—is similarly without merit. The argument that alleged confusion about the appropriate commencement date of

the case, Doe would be entitled to have the 45-day period extended.  Because the record before the Court at the time was insufficient to settle the issue, the Court stated as follows:

> If, after discovery into the issue, USPS is capable of producing evidence sufficient to show that Doe had actual or constructive notice of the limitations period, then in light of the previous findings and conclusions contained in this Opinion, Doe's [Second Amended Complaint] will be dismissed for Doe's failure to timely exhaust his administrative remedies.

*Id*. at 22.

The above legal findings constitute the law of this case, and, despite Doe's many arguments in disagreement with some or all of these conclusions, these findings will not be revisited.  *See CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 845 (D. Del. 2020) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *see also Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) ("If we construe the April 24, 1996 pre-trial ruling as a judgment as a matter of law in favor of the plaintiff, then the district court's post-trial reconsideration of that decision is barred by the law of the case doctrine.").

---

the limitations period, even in light of the Step B Decision, cannot plausibly be considered covered by this equitable tolling provision. Nor does Doe provide any legal support for this contention. Finally, in the absence of any unique circumstances, the Court does not find the regulation's fourth set of circumstances—the so-called "catch all" provision—to be satisfied here. Indeed, Doe's allegations that USPS "actively misled Doe regarding the effective date of the personnel action," Doe Opp'n. at 17, which might justify invocation of this provision, is conclusory and, in the Court's view, facially implausible.

ECF No. 34 at 20-21 (footnotes omitted).

**B.     Legal Principles:  The 45-Day Limitations Period and Constructive Notice**

Title 29 C.F.R. § 1614.105, titled "Pre-complaint processing," provides in relevant part as follows:[13]

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
>> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.
>>
>> (2) The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

"[S]ubjective ignorance alone does not automatically entitle [one] to the exception in 29 C.F.R. § 1614.105(a)(2)." *Johnson v. Runyon,* 47 F.3d 911, 918 (7th Cir. 1995) (citing *Myles v. Schlesinger*, 436 F. Supp. 8, 17 (E.D. Pa. 1976)); *see Clark v. Runyon*, 116 F.3d 275, 277 n.3 (7th Cir. 1997) ("Testimony to the effect that Clark and her coworkers 'did not see' the EEO notices is not by itself sufficient to establish that the notices were not, in fact, posted."). At the same time, "the notification must be reasonably geared to inform the complainant of the time

---

[13]     As the Court explained in its November 4, 2020 Opinion, this regulation sets forth the Title VII pre-complaint procedures applicable to federal employees like Doe.  *See* 29 C.F.R. §§ 1614.101-1614.102; *see also* 42 U.S.C. § 2000e-16.  The regulation is applicable to alleged discriminatory conduct made unlawful by, among other federal statutes, Title VII and Section 504.  *See* 29 C.F.R. § 1614.103.  Importantly, the 45-day EEO initiation prerequisite is not jurisdictional and is akin to a statute of limitations.  *See Williams*, 130 F.3d at  573.

limits before the complainant is estopped from asserting ignorance as an excuse for late filing." *Myles*, 436 F. Supp. at 17.  Where an agency has fulfilled its legal obligation to publicize the time period within which an employee must contact an EEO counselor, its employees are considered to have constructive notice of that limitations period.[14]  *See Gessner v. Runyon*, No. CIV. A. 96-7521, 1997 WL 666294, at *5 (E.D. Pa. Oct. 27, 1997) (discussing regulatory notice requirements and observing that "[t]he regulation merely requires constructive notice").

In determining whether to extend the forty-five day deadline due to lack of notice, courts have applied a two-part test:  "First, the Court must determine if the requisite EEO posters, which would provide information as to the forty-five day requirement, were posted . . . . Second, the Court must determine, by analyzing the placement of the posters, if the posters were reasonably geared to inform the complainant of the time limits."  *Hatcher v. Potter*, No. CIV.A. 04-2130, 2005 WL 3348864, at *4 (E.D. Pa. Dec. 7, 2005) (citing *Clark*, 116 F.3d at 277 and *Johnson*, 47 F.3d at 911), *aff'd*, 196 F. App'x 120 (3d Cir. 2006).[15]  Where both of these prerequisites are found to be satisfied, a complainant has constructive notice of the limitations period, and he "is estopped from asserting ignorance as an excuse for late filing."  *Myles*, 436 F. Supp. at 17.

---

[14]     Agencies are required to

> [p]ublicize to all employees and post at all times the names, business telephone numbers and business addresses of the EEO Counselors (unless the counseling function is centralized, in which case only the telephone number and address need be publicized and posted), a notice of the time limits and necessity of contacting a Counselor before filing a complaint and the telephone numbers and addresses of the EEO Director, EEO Officer(s) and Special Emphasis Program Managers.

29 C.F.R. § 1614.102(b)(7).

[15]     The Third Circuit found no issue with the district court's adoption of the Seventh Circuit's standard for determining constructive notice.  *See also Chatt v. Potter*, No. CIV. 05-346, 2007 WL 1491401, at *2 (W.D. Pa. May 21, 2007).

C. **Application to the Undisputed Material Facts**

Reviewing the factual record in the light most favorable to Doe as the non-moving party, there can be no genuine dispute that both of the elements of the test described in *Hatcher* have been satisfied—*i.e.*, the requisite EEO posters were in fact posted, and the placement (and contents) of the posters were reasonably geared to inform potential complainants, including Doe, of the 45-day limitations period. Doe therefore had constructive notice of the requirement that he initiate EEO contact within 45 days of perceived discrimination, and his lack of compliance cannot be excused.

USPS has brought forward evidence indicating that all versions of "Poster 72" going back to at least March 2012 prominently displayed the following language:

> You must bring individual and class action complaints to the attention of the EEO office by requesting counseling within 45 calendar days of the date of the alleged discriminatory act; within 45 calendar days of the date you knew or reasonably should have known about the discrimination; or if a personnel action is involved, within 45 calendar days of its effective date. If you bring an individual complaint and later believe that your case has class-action implications, you may move for class certification at any reasonable point during the processing of your original complaint.

USPS SOMF ¶¶ 13, 16. USPS has also pointed to evidence that since at least early 2016, Poster 72 has been displayed on the "Permanent Postings" employee bulletin board at the Allentown-Postal Road facility. *Id.* ¶ 8. USPS has moreover shown that the Permanent Postings bulletin board is located just inside the employee entrance to the facility next to the employee break room, and employees regularly walk by the bulletin board when entering or existing the facility. *Id.* ¶¶ 9-12.

In addition to the benefit of "Poster 72," the USPS has produced evidence indicating that Doe had the benefit of at least two "No FEAR Act" trainings, which took place in August 2016 and June 2018. USPS SOMF ¶ 3. These trainings included the presentation of information

regarding the need for USPS employees who believe they were discriminated against to contact an EEO counselor within 45 days of the perceived discriminatory conduct. *Id.* ¶ 5. Doe also had access to USPS's Employee and Labor Relations Manual, as well as USPS "Publication 133," each of which provided information pertaining to the relevant 45-day limitations period. *See id.* ¶¶ 17-19.

The factual record put forward by USPS, if unchallenged, is more than sufficient to support a finding that Doe had constructive notice of the limitations period as a matter of law. *See, e.g.*, *Hatcher*, 2005 WL 3348864, at *5 ("Because the Court finds that the placement of the EEO posters and the content of the posters were reasonably geared to notify employees of the forty-five day limitations period . . . the Court will not extend the forty-five day deadline of 29 C.F.R. § 1614.105 due to lack of notice."); *Chatt*, 2007 WL 1491401, at *2 ("[T]he EEOC's investigation revealed that the appropriate EEO counselor contact time limits was properly displayed at the Post Office where Ms. Chatt worked.  In addition, Defendant has provided an Affidavit from John Potter, the Manager, Distribution Operations, Erie General Mail Facility, Erie, Pennsylvania, in which he states that an appropriate EEO poster with the relevant information, including time limits for initiating contact, has been displayed at the employee entrance of the of the facility. . . . Standard Equal Employment Opportunity posters posted in regularly trafficked areas are sufficient to put an employee on constructive notice of the relevant rules and time limits.").

For Doe to defeat summary judgment, "he must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or [ ] vague statements." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991).  Crucially, Doe has pointed to no record evidence to raise a *genuine* dispute as to any of the above facts, each of which is

supported by credible, admissible evidence.  "A dispute about a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' The dispute is not genuine if it merely involves 'some metaphysical doubt as to the material facts.'" *Devito v. Zucker, Goldberg & Ackerman, LLC*, 908 F. Supp. 2d 564, 572 (D.N.J. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 48 (1986) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Doe's failure in this regard can be illustrated in reviewing several of his responses to USPS's statement of undisputed material facts.  For example, Doe's attempts to dispute—or, perhaps more accurately, his attempts to avoid conceding—USPS's assertion regarding the placement and language of Poster 72, are limited to his averments that "[he] has no way of knowing whether a certain version [of Poster 72] was posted at a certain time," and that "[he] has no recollection of the specific documents, the particularized language within each of the documents, and [he] stated the same in response to discovery."  Doe Answer ¶¶ 14-16. Similarly, Doe's response to USPS's assertion that Poster 72 "prominently and explicitly provides" plain language regarding the 45-day limitations period, USPS SOMF ¶ 13, is as follows:  "This characterization is advocacy-constructed and is being denied," Doe Answer ¶ 13. However, Doe points to no record evidence in support of his purported dispute of USPS's assertion, as is required of parties opposing summary judgment.  *See* FED. R. CIV. P. 56(c)(1)-(2). Responses such as Doe's are simply insufficient to defeat summary judgment.  *Cf. Gessner*, 1997 WL 666294, at *5 ("Plaintiff's mere statement that he had no actual knowledge of the time limits, however, does not give rise to any genuine issue of fact on the issue of notice where the plaintiff does not dispute that the Postal Service posted adequate notice of his EEO rights.").

As the Defendant and moving party, USPS has the burden of showing that there is no genuine factual dispute that Doe had constructive notice of 29 C.F.R. § 1614.105(a)(1)'s 45-day limitations period. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997) ("Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies."). USPS has met its burden: It has shown by reference to admissible record evidence that, in addition to the availability of other sources of information, Poster 72 was posted in a location, and designed in a way, so as to be reasonably geared to inform Doe that he had 45 days to initiate contact with an EEO counselor from the time he experienced perceived discriminatory conduct. Doe, in turn, has failed to point to any evidence capable of raising a genuine dispute as to these facts. USPS has therefore shown that, as a matter of law, Doe had constructive notice of the limitations period, and as a result he is not entitled to the benefit of an extension of that period as provided for in 29 C.F.R. § 1614.105(a)(2).

### D. Doe's Contentions Disclaiming Notice are without Merit

Perhaps realizing that he can point to no evidence to dispute the placement and content of Poster 72, Doe's opposition to USPS's motion relies almost exclusively on a single argument against the existence of constructive notice. He contends as follows:

> This Court purports to rule on summary judgment on the limited issue of actual or constructive notice of claims that, in reality, were expressly prohibited by law, including Bibby v. Philadelphia Coca Cola Bottling Company, 85 F. Supp. 2d 509 (3d Cir. 2000), and its progeny, all the way up until the Supreme Court of the United States' momentous decision in Bostock v. Clayton County, Georgia, 140 S.Ct. 1731, 2020 WL 3146686 (U.S. June 15, 2020), this past term. So it cannot be said that an LGBT employee had actual or constructive notice that they could have alleged these sexual-orientation claims, when such claims were clearly not permitted by law, in this Circuit, to be alleged in the first instance, under Title VII. During the subject timeframe, for a decade or more of Doe's employment, during which he alleges he experienced a hostile work environment based on his sexual orientation, LGBT claims were not permitted in this Circuit, which is a plain fact

that it appears is being ignored. To say Plaintiff should have known, for example, to report the hostile work environment based on sexual orientation that he was experiencing, during a time period when such a claim was expressly prohibited by Bibby, and its progeny, is Kafkaesque.

ECF No. 42 at 1-2.

There are several problems with this argument, each of which is recognized and addressed by USPS.

First, Doe's argument runs counter to the determinations already made by the Court: The findings of the Court's November 4, 2020 Opinion, and the Court's directives to engage in limited fact discovery on the issue of notice, clearly presume that Doe *could* have had constructive notice of the limitations period. *See* ECF No. 34 at 21-23; *see also* ECF 44 at 3. Indeed, the instant Opinion concludes that Doe did in fact have constructive notice.

Second, as USPS points out in its reply memorandum:

> [W]hile, before *Bostock*, the Third Circuit did not construe Title VII's phrase "because of . . . sex" to include sexual orientation . . . the EEOC construed the same phrase to include sexual orientation . . . . That is, as a matter of law, Doe is incorrect that, before *Bostock*, he was without any remedy for alleged sexual-orientation discrimination under Title VII.

ECF No. 44 at 3. As additionally observed by USPS, certainly

> Doe's argument that, prior to *Bostock*, he was without any remedy for alleged sexual-orientation discrimination and therefore without any reason to contact an EEO counselor is belied by his own actions. Doe invoked the EEO process on September 9, 2019, alleging "removal because of sexual orientation discrimination" and requesting "reinstatement with continued seniority." . . . That is, before *Bostock* was decided, he sought a remedy, available under Title VII as construed by the EEOC, through Title VII's EEO procedures, for conduct that he believed at that time to be prohibited discrimination on account of his sexual orientation.

*Id*. at 4.[16]

---

[16]   Additionally, to the extent Doe is arguing that sexual-orientation discrimination was not prohibited by USPS policy before March 2018, when USPS issued an "Equal Employment

Perhaps most fundamentally, Doe misapprehends what it is the instant factual inquiry is attempting to determine that he had notice of: not (a) whether Title VII jurisprudence would one day change, creating a remedy for him that he did not have at the time he was required to initiate EEO contact, but rather (b) a specific temporal requirement in a federal regulation setting forth pre-complaint procedures for pursing claims of discrimination. The scope of Title VII remedies simply has no bearing on the need to comply with pre-complaint procedures. Nor has Doe cited any legal authority standing for the proposition that compliance with pre-complaint procedures can be waived or excused based on the state of Title VII jurisprudence in a certain jurisdiction at a given time.[17]

## V.    CONCLUSION

For the reasons discussed above, as well as the reasons set forth in the Court's November 4, 2020 Opinion, USPS is entitled to summary judgment in this case. On the factual record before the Court, there can be no genuine dispute that Doe had constructive notice that he was required to initiate EEO contact within 45 days of perceived discriminatory conduct pursuant to 29 C.F.R. § 1614.105(a)(1). Because his initiation of EEO contact on September 9, 2019, fell outside the 45-day limitations period, and because his constructive notice of the limitations period precludes its extension under 29 C.F.R. § 1614.105(a)(2), Doe has failed to timely

---

Opportunity Policy Statement," it appears he is incorrect here as well for the reasons set forth by USPS in its reply memorandum. *See* ECF No. 44 at 5-6.

[17]  Indeed, there is no indication the *Bostock* plaintiffs themselves believed that state of Title VII jurisprudence—in particular, the inability to bring a same-sex discrimination claim under Title VII—excused compliance with Title VII's pre-complaint procedures. *See, e.g.*, *Bostock v. Clayton Cty.*, No. 1:16-CV-001460, 2016 WL 9753356, at *2 (N.D. Ga. Nov. 3, 2016) ("Mr. Bostock filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 5, 2013. . . . As reflected on the Charge, Mr. Bostock checked the box for sex discrimination and stated in part as follows: 'I believe that I have been discriminated against because of my sex (male/sexual orientation).'").

exhaust his administrative remedies.  He therefore cannot proceed on his claims, and they are dismissed.

A separate Order follows this Opinion.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

19
022621